## Case No. 15,901.

### UNITED STATES v. NOURSE.

[4 Cranch, C. C. 151.] [1]

Circuit Court, District of Columbia. May Term, 1831.[2]

DISBURSING OFFICER — COMPENSATION — REGISTER OF TREASURY.

A register of the treasury of the United States is entitled to a reasonable compensation as agent for disbursing the money appropriated for the contingent expenses of the treasury department, library of congress, and other appropriations for public purposes, although, at the same time, he discharges the duties, and receives the pay, of register of the treasury, and such compensation is not barred by the statute of limitations.

[Appeal from the district court of the United States for the District of Columbia.]

This suit was commenced on the 14th of July, 1829, by a treasury warrant issued under the hand and seal of S. Pleasonton, "Agent of the Treasury," under the second section of the act of congress of the 15th of May, 1820 (3 Stat. 592), entitled "An act providing for the better organization of the treasury department;" directed to the marshal of the District of Columbia, and commanding him to proceed immediately to levy and collect the sum of $11,769.13, by distress and sale of the goods and chattels of the said Joseph Nourse, giving ten days' notice of such sale; and should there not be found sufficient goods and chattels to satisfy the said sum, he was thereby commanded to commit the body of the said Joseph Nourse to prison, there to remain until discharged by due course of law; and should the said Joseph Nourse be committed to prison as aforesaid, or should abscond, and sufficient goods and chattels should not be found to satisfy the said sum, the marshal was thereby commanded to levy upon and expose to sale, at public auction, for ready money, to the highest bidder, the lands, tenements, and hereditaments of the said Joseph Nourse, or so much thereof as might

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 6 Pet. (31 U. S.) 470.]

be necessary, &c., upon three weeks' notice, and to make return of the said warrant "to this office," that is, the office of the agent of the treasury.

By the 4th section of the act, any person considering himself aggrieved by such a warrant, may prefer a bill of complaint to any district judge of the United States, who may grant an injunction, upon bond and security, and the same proceeding shall be had on such injunction as in other cases, except that no answer shall be necessary on the part of the United States. The fifth section provides, that such injunction may be granted in, or out of, court; and the sixth section enacts, that any person aggrieved by the refusal, or the dissolution, of any injunction, may apply to a judge of the supreme court, who may grant the injunction or permit an appeal, upon which the same proceedings may be had in the circuit court, as in the district court.

This warrant having been levied by the marshal, on the lands, tenements, goods, and chattels of Mr. Nourse, he preferred his bill under the fourth section of the act, on the 25th of August, 1829, to the chief judge of the circuit court of the District of Columbia, who, by virtue of that office, is sole judge of the district court of the United States for the District of Columbia; in which bill, after stating that since his recent removal from the office of register of the treasury, (May 31, 1829), his public accounts as register and agent of the treasury department in disbursing certain funds, and settling certain accounts of contingencies, and other miscellaneous matters, and as agent for the joint library committees of congress, matters altogether distinct from, and unconnected with, his duties as such register, have been settled at the treasury, and a pretended balance found against him of $11,250.26, for which a warrant had been issued against his lands, tenements, goods, and chattels, under the act of May, 1820, and levied upon the same in his absence. He avers that the said account is unjust and illegal; and that so far from any balance being due to the United States, a considerable balance should have been struck thereon in his favor, as appears by an account filed by him, and which he declares to be just and true. That he took upon himself this distinct branch of duty at the special instance and request of the proper department of the government, having competent authority to engage him or any other agent in that capacity. That the performance of those duties devolved upon him great labor, responsibility, and risk, independent of, and apart from, his proper duties as register, and occupied a great portion of his private hours; that is, of those hours when, according to the established order and routine of his department, he was altogether discharged and free from the proper duties appertaining to his office of register, and had his time at his own disposal, but for his employment as special agent as aforesaid. And that besides the

great labor and consumption of time induced by this extra employment, he was exposed to considerable pecuniary losses from the ordinary errors that occasionally occur in the accounts of the best accountants, from the multiplicity and minuteness of the various accounts and vouchers to be settled and preserved. That when he undertook this branch of public employment, the precise nature and amount of compensation therefor were not ascertained by any particular stipulation. That the usage of the treasury department, and other departments of the government, has invariably been, since the organization of the general government, to allow such commissions, or percentage, not only to unofficial persons so employed, but to official persons and clerks of the departments, when such duties were distinct from the stated duties of their offices, although such official persons were in the receipt of fixed salaries for their stated duties. That as early as the year 1800 he made out an abstract of these services, claiming to be allowed a compensation therefor; which original abstract is on file in the treasury department. That he has duly made out and presented his account to the proper accounting officer of the treasury, charging his commission at the rate of two and a half per cent. on the amount of his disbursements, which, if allowed, would, after a full and fair settlement of all his public accounts, leave the United States indebted to him in a balance of $9,886.24; which he has good reason to believe, and does believe, to be justly and equitably due to him from the United States, as stated in his annexed account. That the accounting officers of the treasury have rejected his said charge, and denied him any manner of compensation for his extra services as such special agent as aforesaid; not on the ground or pretence that his charge of commission is too high or unreasonable, if he were entitled to any compensation; but that he is not entitled to any compensation whatever for such extra services. He denies that he is within the description of persons, or officers, over whom the act gives jurisdiction to the agent of the treasury; which opinion he supports by an extended argument in his bill; wherefore he prays that the parties may be remitted to the ordinary process of law, so as to have a fair trial on the merits before execution be had of his body or estate, and an injunction to stay proceedings on the warrant altogether.

The injunction was granted, and served upon the agent of the treasury, with a citation to appear and answer the bill at the next district court at Alexandria; when and where Mr. Swann, the attorney of the United States for the District of Columbia, appeared and answered, that upon a settlement, by the proper accounting officers of the treasury, of the complainant's general account, comprehending the different agencies under which he acted as register of the treasury, he was found indebted to the United States in the

sum of $11,769.18. as appears by the account, a copy of which the complainant has exhibited with his bill, with the letter of Joseph Anderson, comptroller. which shows the grounds upon which the United States claim the balance of $11,769.18; and that the difference between that and the complainant's account consists of the commissions at two and a half per cent. claimed by him on his disbursements. The answer denies that the complainant is entitled by law to those, or any commissions, and prays that the injunction may be dissolved.

On the 20th of December, 1830, the district judge, having heard the parties by their counsel, made the following order and decree: "That the said Joseph Nourse has produced satisfactory evidence that he did, for a long course of years, render various services and disburse large sums of money for the use of the United States, and at their request, from time to time, made through the respective secretaries of the treasury, for the time being; which services and disbursements were performed and made by the said Joseph Nourse over and above the services required by the duties of his office as register of the treasury of the United States, for which said extra services and disbursements he has never been allowed any compensation in the settlement of his accounts in the treasury department; and it being deemed by the court expedient to ascertain by the report of auditors to be appointed by the court for that purpose, the value of those services, and the compensation to which the said Joseph Nourse is equitably entitled therefor, and for his disbursements as aforesaid: It is further ordered that Robert J. Taylor, Phineas Janney, and Colin Auld, be, and they are hereby appointed auditors to ascertain the said value and compensation, and to report thereon to this court without delay; and that such of the papers and evidence in this cause as relate to that subject, be submitted to the said auditors for their better information thereon."

On the 31st of December, 1830, the auditors reported: "That it appears from the documents and evidence submitted to them, that from the 10th of April, 1790, to the 31st of May, 1829, thirty-nine years, one month, and twenty-one days, the complainant, as agent for the payment of contingent expenses of the treasury department; for stationery and printing of public accounts; for payment of the superintendent and watchmen of the state and treasury departments; for miscellaneous disbursements, comprising fifteen different agencies; for advances made to sundry persons who brought from the several states the votes for presidents and vice-presidents of the United States; and on account of the congressional library; disbursed the sum of $943,308.83; the services rendered in which said agencies, and in making said disbursements, were over and above the services required of him by the duties of his office of register of the treasury of the United States.

We find that for similar services, where no special provision had been made by law, a commission of two and a half per cent. has been, heretofore, in many cases, allowed at the treasury of the United States; and we are of opinion that a commission of two and a half per cent. on the said sum of $943,308.83, amounting to the sum of $23,582.72, is an equitable compensation for the services so as aforesaid rendered to the United States by the said Joseph Nourse; and that the said services are equitably worth the said last-mentioned sum."

Whereupon the following decree was made by the district judge, on the 4th of January, 1831. "And at a court continued and held for the said district on the 4th day of January, 1831, the auditors, Robert J. Taylor, Phineas Janney, and Colin Auld, to whom," &c., "having made and returned their report," &c., "and no sufficient reasons having been presented to the court against the confirmation of the said report of the said auditors, it is, therefore, this 4th day of January, 1831, ordered, adjudged, and decreed, that the said report be, and the same is hereby, in all particulars confirmed and made absolute; and the said cause now also coming on for final decision upon said report, and the bill, answer, replication, exhibits, depositions, and other evidence admitted by the parties, and upon the equity reserved under and by the said interlocutory order, it is further ordered, decreed, and adjudged, that the injunction, heretofore granted in this cause, be, and the same is hereby perpetuated; and that the said defendants be, and they are hereby perpetually enjoined from proceeding further against the said complainant upon the warrant of distress in the bill mentioned for or on account of the claim or demand for the recovery of which the said warrant of distress was issued."

The United States appealed to the circuit court of the District of Columbia, where a motion was made by Mr. R. S. Coxe, to dismiss the appeal, and contended that this was a summary proceeding in derogation of common right, and the jurisdiction must be limited to the express provisions of the act which gives the remedy. It does not give the United States any right to appeal. The district court had no jurisdiction in any suit against the United States. This proceeding is not a suit. No judgment can be rendered in it against the United States. It is not such an action as is intended by the judiciary act of 1789 (1 Stat. 73), where an appeal is given. It is a power given only to the judge, not to the court; and it is given to the judge of any district. A district judge in Georgia may enjoin a warrant levied in this district. There can be no jury to ascertain facts. It is no action. It is like the case of claimants in Missouri, &c., a special commission; and the power given to the chancellor in bankruptcy. The jurisdiction begins and ends in the statute which gives it. There can be no appeal

because none is given by the statute. In lunacy, the authority is personal in the chancellor. The appeal is to the king in council; not to the house of lords. It is to the king as parens patriæ. Sheldon v. Aland, 3 P. Wms. 107; Saul v. Wilson, 2 Vern. 118; 2 Mad. 446. In Bulloch's Case, in the district court of the United States in Georgia, the circuit court decided that no appeal lies under the act of 15th May, 1820.

Mr. Swann and Mr. Key, contra. This is a suit or action. The bill prays for an injunction, and for general relief. The judiciary act of 1789 (1 Stat. 73) gives an appeal, or writ of error, in all cases over $50. It applies to new jurisdictions as well as to the old. If the district court should dismiss the bill on final hearing, it would be hard if the debtor could not have an appeal. So it is strange if the legislature should give a right to appeal upon an interlocutory decree and not upon a final decree; and should give the complainant a right of appeal upon an interlocutory decree, and not reserve to the United States a right to appeal upon a final decree against them. The fourth section says: "The same proceedings shall be had as in other cases." An appeal is expressly given upon refusing or dissolving the injunction, because a decree of refusal or dissolution is only an interlocutory decree; and an appeal, by the former law, could only be taken to a final decree. And the allowing of such an appeal from an interlocutory decree, does not deprive the party of his appeal upon a final decree. By the act of the 3d of March, 1803 (2 Stat. 244), an appeal is given upon every final decree. A decree for a perpetual injunction is a final decree. This is the judgment or decree for a court, and being in its nature final, an appeal lies of course under the act of 1803.

THE COURT (CRANCH, Chief Judge, not sitting) was of opinion that the United States had a right to appeal; and on a subsequent day, THRUSTON, Circuit Judge, delivered the opinion of the court (CRANCH, Chief Judge, not sitting on the appeal):

The great question, in this cause, is: "Is the appellee, as agent for the disbursement of certain contingent funds of the treasury department, library of congress, and other appropriations for public purposes, entitled to compensation for those disbursements?" It is a single and a simple question; and can admit of no doubt, if the defendant be not barred by considerations connected with and growing out of his official duties as register of the treasury. The first point, then, is to examine those official duties. See the law declaring those duties. Here we see his duties as register, defined, among which we cannot discern that of receiving and paying public moneys. It is plain that he was not bound, as register, to receive or pay away public moneys, but he has, for a long course of years, received, paid away, and accounted for very large sums of public money. This must have been an extra duty, in nowise incident to his office of register. How came Mr. N. to have this duty imposed on him? We are told in the certificate of Oliver Wolcott, in the year 1801, that Mr. Nourse had been "employed" as agent for defraying the incidental and contingent expenses of the treasury department. Here we have evidence of the way in which Mr. Nourse became agent. He was "employed." This is a strong expression, and deserves consideration. It carries with it the idea, and almost the essence of a contract. What other more forcible expression would have been used if a contract had been made with any private person? If the secretary had a right to require this duty of Mr. Nourse as register, would he have used the term "employed"? Would he not rather have said, Mr. Nourse has been required, ordered, directed, or appointed? Suppose Mr. Nourse had refused the agency, would there have been any violation of his official duty? None whatever. Then one of two consequences follows. This burthensome agency, (for that it was onerous and troublesome is proved by the depositions of Mr. Michael Nourse, Mr. Charles J. Nourse, Mr. Rush, Mr. Crawford, and the certificate of Mr. Wolcott,) was undertaken gratuitously, or compensation was expected. Was it undertaken gratuitously? That it was not is proved by the intended application to congress for compensation, as far back as 1801, as appears by the memorial to congress exhibited in the argument, with Mr. Wolcott's certificate indorsed. Then it is evident Mr. N. expected compensation, and the then secretary of the treasury was apprised of it. Here was notice that Mr. N. expected compensation; and, of course, he acted neither gratuitously nor under the impression that he was, in executing this agency, discharging any duty belonging to his office of register, but an extra duty for an expected compensation.

But it is contended that if Mr. N. is entitled to compensation, it is a right founded upon no law, and dependent entirely upon the will of congress. A right not to be asserted in a court of law, is a solecism. A strange argument has been used to maintain this principle,—that because Mr. Nourse proposed to apply to congress for remuneration, he has acknowledged that he had no legal remedy. How so? Does a man forfeit his right to compensation for services rendered because he has misconceived his remedy? But how did he misconceive his remedy? He could not have sued the government; and therefore had no means to enforce his claim in a court of law. But it is asked, why did he not prefer his accounts to the treasury department at the time he thought of the memorial to congress? Because, in the first place, he might have been, and probably was ignorant of his rights, or apprehended that the secretary of the treasury had no power to allow them;

or he might have been apprehensive of giving offence to the government, and as he was a removable officer, that he might have endangered his office of register; and, moreover, as he had always large sums of public moneys in his hands, there was, in fact, but little necessity for having the legal point settled at that time. But, for none of these causes can I discern that he has waived or forfeited his right to compensation. Admitting, then, that Mr. Nourse was doubtful, at that period, of his claim to compensation, little doubt exists, at this day. The practice that has uniformly prevailed since, in transactions of this nature, has settled the point. The opinion of Mr. Wirt in Governor Cass' Case [2 Ops. Attys. Gen. 189], the allowance by Colonel Bomford for extra services of this sort rendered by army officers; of General Gratiot, by engineer officers, all go to show compensation for extra services in disbursing money by officers who receive regular pay as such; and in private transactions compensation by way of commissions to agents receiving and disbursing moneys, is too well settled to be disputed. Then if Mr. Nourse always expected compensation for this extra service, and the government was apprised of it in 1801, (see O. Wolcott's certificate,) and he has not forfeited it, as I have endeavored to show, by either ignorance of his rights, or by not asserting them sooner, because, having, as I observed, already large sums in his hands, and had, until now, no necessity to assert them, I see no reason why he is not entitled now to this compensation; and in this I am supported by Mr. Crawford, late secretary of the treasury; and as two and a half per centum is the rate of allowance established for similar services, (see Bomford and Gratiot's certificate,) and has been reported reasonable by the auditors, whose report stands unexcepted to, I am of opinion that the decree of the district judge should be affirmed by this court.

A strange argument was used to show that Mr. Nourse would have had the same duties to perform as register, had he not acted as agent, as he has had, having acted as such; that he would still have had the accounts of the agency to register and enter on the books of his office, and so as register he would have had this duty to perform let who will have been agent; and he had all this to do, although he was himself the agent. But, in fact, the concerns of the agency are entirely distinct from and independent of his functions as register. What have contracts for wood, paying superintendents of buildings, watchmen, paying drafts of the library committee for books purchased, paying painters, glaziers, carpenters, bricklayers for work done on the public offices, and the multifarious and innumerable private claims on the contingent fund, and many of these payments, and indeed most of them, not in office hours, drawing checks, &c. &c., keeping private books of these transactions, producing vouchers for every, even the smallest payment in settling his accounts, to do with his duties as register of the treasury? Nothing. They are entirely distinct. But Mr. Nourse was "employed" to do all this; and if he was employed, why should he not be paid? If no special contract was made, then he is entitled, on the principle of a quantum meruit, which creates an implied assumpsit, to pay, on the part of the government, and the quantum of two and a half per cent. is settled by the usage established by other officers of the government in similar cases; by the report of the auditors and by all the analogies to the cases of private agents.

As to the statute of limitations; in the first place, it is not pleaded; in the next place, it cannot avail against a party who could not assert his claim by law. Mr. Nourse could not sue the government; therefore could not avoid the operation of the statute. He was obliged to wait to be sued. Besides, we are bound to decide on principles of justice and equity. The statute, if otherwise available of, seems to be overruled by this directory provision. But the government would be disgraced by pleading the statute of limitations, and if so, we ought not to allow it. Moreover, the policy of the statute, however wise and wholesome as to transactions between private persons, is in nowise applicable to government concerns. The prevention of litigation, the peace and quiet of the community, and the security of the citizens against stale claims, were the objects of the statute; none of which seem at all to bear on the interests or the weal of the government; and therefore the government ought not, and cannot take shelter under it. Again, the United States are not bound by the statute, and it is not right that they should have the benefit of it; the benefit should be reciprocal.

As to the want of a replication, it appears, from the record, that a general replication was agreed to be filed, in the judge's order of the 2d of January, 1831, (see page 7, of the record; see, also, the final decree of the judge,) who says, "The cause coming on for final decision, on said report, and the bill, answer, replication," &c., "admitted by the parties," so that there appears to have been a replication.

The decree of the district court is affirmed.

NOTE. Reversed by the supreme court of the United States (6 Pet. [31 U. S.] 470), on the ground that the United States had no right to appeal from the district to the circuit court; which, in effect, affirmed the judgment of the district court.

[Subsequently the United States instituted an action of assumpsit upon a transcript from the treasury. The circuit court gave judgment for the defendant, and on error that judgment was affirmed by the supreme court. 9 Pet. (34 U. S.) 8.]