**KANAME FUJINO v. CLARK, Atty. Gen.**

Civ. No. 704.

District Court, Hawaii.
April 22, 1947.

Smith, Wild, Beebe & Cades, of Honolulu, T. H., for plaintiff.

John F. Sonnett, Asst. Atty. Gen., Harry LeRoy Jones, Sp. Asst. to the Atty. Gen., George B. Searls, Chief Trial Atty., and William J. Conner, Atty. Department of Justice, both of Washington, D. C., Ray J. O'Brien, U. S. Atty. for Hawaii, of Honolulu, T. H., and George W. Jansen, Chief

**2**

Trial Atty. Department of Justice, of Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

This suit is founded upon Section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a), and has been brought by the plaintiff to recover six parcels of real property vested under the Act and Executive Order No. 9095, as amended, 50 U.S.C.A.Appendix, § 6 note, by the Custodian on December 3, 1943 (Vesting Order No. 2724; Fed. Reg. 16937).

From the evidence the following data is derived and recorded as the Court's

Findings of Fact.

1. This Court has jurisdiction of the parties and of the subject matter (50 U.S.C.A.Appendix § 9(a).

2. Plaintiff is a citizen of the United States and a resident of Honolulu, Territory of Hawaii.

3. Defendant is the Attorney General of the United States and as such is successor to the Alien Property Custodian (11 Fed.Reg. 1198).

4. On December 3, 1943, the Custodian vested title to six parcels of land in Honolulu.

5. Plaintiff was the record owner of the land the title to which the Custodian vested.

6. At all times herein involved, Yotaro Fujino and Chiyono Fujino, parents of plaintiff, were residents, nationals, and subjects of Japan. In Japan Yotaro Fujino disposed of the scrap iron shipped there by his Hawaiian business enterprise and arranged for the shipment of cement to his company in Hawaii.

7. Prior to March 21, 1941, Yotaro Fujino was the record owner, as well as the true and beneficial owner, of this land.

In 1940 Yotaro Fujino, age 55, discussed with his Hawaiian attorney who was visiting Japan his Hawaiian business affairs. The strained international situation was a factor in this discussion. At this conference Yotaro Fujino perfected his plan to give his Hawaiian land to his only son, and to incorporate his business located thereon and to give his family shares therein in such a way that he could retain control of them and of their shares. Based upon this plan, he issued appropriate instructions to his attorneys in fact in Hawaii through correspondence with his business advisor, Seitaro Yamamoto.

In discussing his plans with his son, Yotaro Fujino told his son when he directed him to execute a power of attorney to the same two men who held a like power from his father that some day he would give the whole business in Hawaii to him, but that in the meantime he should go to school and prove himself and show that he can run the business.

8. On February 20, 1941, Yotaro Fujino executed in Japan a general and new power of attorney to Tokuichi Tsuda and Yasuo Tsutsumi of Honolulu, by the terms of which he authorized his attorneys in fact, amongst other things, "to buy, take on lease and otherwise acquire, and to hold, sell, mortgage, hypothecate, pledge, lease and otherwise dispose of, and in any way and every way and manner deal with real property, leaseholds, and other interests in real property" Plaintiff's (Exhibit E). Tsuda and Tsutsumi have acted under this and a prior similar power since 1935, the year in which Yotaro Fujino went to Japan to reside permanently. This new 1941 power of attorney was executed because of the confusion arising from two nearly identical powers executed by him in 1935 prior to leaving for Japan, in one of which his first name was spelled "Yootaro".

9. At all times here involved Tsuda and Tsutsumi were also attorneys in fact under general powers of attorney for plaintiff's mother and for the plaintiff. As of the date of trial Tsuda and Tsutsumi still held unrevoked powers of attorney from the plaintiff, his father, and his mother.

10. For years prior to November 27, 1940, plaintiff's father, Yotaro Fujino, was the sole owner of a business known as the Oahu Junk Company and Oahu Lumber and Hardware Company. On November 27, 1940, the Oahu Junk Company, Ltd., was incorporated, and upon December 2, 1940, all of the assets of Yotaro Fujino's business enterprise, except the real estate here involved, were transferred by Yotaro Fujino, acting through his attorneys in fact, to Oahu Junk Company, Ltd., "in consideration of the * * * issuance to

him of 790 shares of capital stock" of the corporation (Defendant's Exhibit No. 4). This stock was issued of record at Yotaro Fujino's direction as follows:

| | |
|---|---|
| Yotaro Fujino (Father) | 238 shares |
| Chiyono Fujino (Mother) | 118 shares |
| Kaname Fujino (Only son, plaintiff) | 200 shares |
| Katsue Fujieki (Daughter) | 117 shares |
| Shizue Maneki (Daughter) | 117 shares |

At the same time the plaintiff, his mother, and each daughter executed promissory notes to Yotaro Fujino for the par value of the shares registered in their names. Yotaro Fujino required his wife, son, and daughters to execute these notes to him so that he could retain control over them and their stock in the corporation.

11. The real property here involved, except for a small parcel, was and is occupied by the business enterprise, whether as a sole proprietorship or as a corporation, as its principal place of business, and was and is necessary and indispensable to the conduct and operation of the business.

12. On March 13, 1941, Yotaro Fujino, while working out his plan to give his real estate to his son, through his attorneys in fact mortgaged to a local bank this real property for $15,000, and the indebtedness has since been paid by the Oahu Junk Company, Ltd. (Plaintiff's Exhibit K)

13. On March 21, 1941, the attorneys in fact of Yotaro Fujino purporting to act for him under the power of attorney dated February 20, 1941 (Plaintiff's Exhibit E) executed a deed to the real estate here involved by which they purported to convey it to the plaintiff as a gift. The deed was not delivered to the plaintiff until May 1941 when he returned from Japan, and it was not recorded until May 19, 1941. Plaintiff endorsed for the bank his father's mortgage note at the time the deed was delivered to him.

14. Three months after the deed was delivered to plaintiff, at the suggestion of the attorneys in fact, rent was paid plaintiff by the corporation from the date of the deed. The rental figure of $300 per month net was suggested by Tsuda and Tsutsumi and accepted without question by plaintiff. Plaintiff used the rental money to support himself, to help his sisters, and to care for his father's family obligations. In addition a tax liability of his father's—$8,000—was paid by plaintiff through a transaction by which the corporation loaned plaintiff the money and credited the rent as it fell due against the loan; the $8,000 was to be credited upon plaintiff's note to his father (Plaintiff's Exhibit P). Plaintiff knew nothing of the value of the land, nor the rental value thereof. He took no active part in the management of the corporation. The management of the business and the real estate was left entirely to the attorneys in fact, and plaintiff with regard to each did what he was advised to do by his father's attorneys in fact.

15. Although record title to the six parcels of land stood in plaintiff's name, he did not have or purport to exercise complete and absolute ownership of the property. Notwithstanding the deed, plaintiff's father, the grantor, has, through his attorneys in fact and personally, retained control and the beneficial ownership of the land. In holding the record title to the land, plaintiff has acted for and in behalf of his father and has been controlled by him.

### Comment

■ This suit is in substance against the United States, and consequently the plaintiff must meet the terms and conditions under which the sovereign has consented to be sued. Cummings v. Deutshe Bank und Disconto-Gesellschaft, 300 U.S. 115, 57 S. Ct. 359, 81 L.Ed. 545; Becker Steel Co. v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L. Ed. 54.

The plaintiff has failed to meet the burden of proving (1) that he has an "interest, right, or title" to the real property (Section 9(a) of the Act) and that if he has, (2) he holds the same "for his own * * * and sole use and benefit." Section 5(b) of the Act; Executive Orders No. 8389 and 9095, both as amended, 12 U. S.C.A. § 95a note, 50 U.S.C.A.Appendix, § 6 note. Von Zedtwitz v. Sutherland, 58 App.

4

D.C. 153, 26 F.2d 525; Draeger Shipping Co., Inc., v. Crowley, D.C., 55 F.Supp. 906.

In the first place the plaintiff has no title to the real property. True his father, as part of his plan, admittedly intended to make a gift of it to him, but the means employed rendered the execution of his plan ineffective.

Under the laws of Hawaii, Rev.Laws 1945, Section 12757, powers of attorney for the transfer of real property must be recorded, otherwise the conveyance is not binding to the detriment of third parties. Exhibit E was recorded, but it gave Yotaro Fujino's attorneys in fact no authority to give away any of his assets. The deed of March 21, 1941, (Exhibit H) is not binding upon the Custodian.

■ To authorize a gift of an asset by an agent, the agent must have such a power expressly and clearly conferred. Kaaukai v. Anahu et al., 30 Haw. 226; Brown v. Laird, 134 Or. 150, 291 P. 352, 73 A.L.R. 877, 884; Bertelsen v. Bertelsen, 49 Cal.App.2d. 479, 122 P.2d 130. See also 2 Am.Jur., "Agency", Sections 31, 145; 2 C.J.S., Agency, § 114, p. 1332; and Mechem on Agency (2d Ed.), Sections 783, 818.

■ Clearly "give, grant, bargain, sell, and convey" (Exhibit H) is not within the power "to hold, sell, mortgage, hypothecate, pledge, lease and otherwise dispose of" (Exhibit E). The argument that a gift is within the meaning of the phrase "and otherwise dispose of" for what is a gift but that which is not a sale or a mortgage, is not convincing. This catchall phrase adds nothing, for it refers to such undescribed methods of disposition as may have been omitted (but were not) and are in nature like those specifically enumerated. Exhibit E must be read as a whole, and thus read it is obviously a grant of—as it says—full and adequate power "to carry on and transact all my business in the Territory of Hawaii". A gift is not a business transaction.

So it is that that which grantor himself could have done, he did not give his agents the power to do, and as against the interests of a third party the grantor's unrecorded, relayed directions by letter and cable to his agents to do what they did do, were ineffective, and the deed conveyed no interest in or title in the land to the plaintiff.

But even assuming that the power of attorney be held to include the power to make a gift, plaintiff still is not entitled to recover because of the provisions of Section 5(b) of the Act and Executive Orders issued thereunder, which he has been unable to surmount.

■ In keeping with the purposes of the Trading with the Enemy Act—to lessen the enemy's and increase our own ability to wage war successfully—Josephburg v. Markham, 2 Cir., 152 F.2d 644; Silesian-American Corp. v. Markham, 2 Cir., 156 F.2d 793, it is permissible to look through and beyond the technicalities of the law of conveyancing to the realities. See Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Losh v. Commissioner, 10 Cir., 145 F.2d 456; and Commissioner v. Buck, 2 Cir., 120 F.2d 775. Family arrangements are subject to close examination, and factual control is more significant than the niceties of legal title.

The evidence clearly discloses Yotaro Fujino's plan. He openly declared that he wanted to give members of his family shares in his business in such a way that he could still control it by controlling them. This he did most effectively by the stock transaction above described and found as fact—fact incidentally as to which there is no dispute. The land upon which the business was operated was essential to the continued conduct of the business. By controlling the plaintiff as a son and an only son, and controlling him directly as to his use of his shares of stock, Yotaro Fujino indirectly but effectively silently controlled plaintiff's use and disposition of the land. Plaintiff dare not dispose of it or even set a rental figure himself lest he incur his father's displeasure and be read out of the family and out of the corporation. The evidence shows upon which side plaintiff's bread was buttered and that he knew it, too. He would not dare move with respect to his title to the land contrary to his father's interest in the business, to which the land was most essential. Yotaro Fujino in point of fact controlled

the plaintiff, thereby retaining the control, beneficial use, and enjoyment of the land in question.

In such a situation upon the date of vesting, the Custodian was justified in determining the plaintiff to be, despite his United States citizenship, one who in the national interest was to be treated as a national of a designated enemy country (Japan), and the property was validly vested under Sections 5(b) and 7(c) of the Act and Executive Orders issued thereunder.

Upon the facts found the following are the

### Conclusions of Law.

A. The Court has jurisdiction of the parties and of the subject matter. 50 U.S. C.A.Appendix, § 9—Trading with the Enemy Act.

B. Yotaro Fujino is an enemy alien and a national of a designated enemy country (Japan) within the meaning of Sections 2 and 5(b) of the Trading with the Enemy Act, as amended, and Executive Orders Nos. 8389 and 9095, both as amended.

C. Plaintiff is a national of a foreign country within the meaning of Section 5(b) of the Act and Executive Orders Nos. 8389 and 9095, both as amended, in that he acted in behalf of or under the control of his father, Yotaro Fujino, a national of designated enemy country (Japan).

D. Upon the date of vesting, the real property was:

1. Property "owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy" (Yotaro Fujino) not holding a license within the meaning of Section 7(c) of the Act, and

2. Property or an interest therein "owned or controlled by, payable or deliverable to, held on behalf of or on account of or owing to or which is evidence of ownership or control * * * by an enemy country or national thereof" (Yotaro Fujino—Japan) within the meaning of Section 5(b) of the Act and Executive Orders Nos. 8389 and 9095, as amended.

E. As against the United States or any third party, the March 21, 1941, deed of gift from Yotaro Fujino to the plaintiff is a nullity because the grantor's attorneys in fact had no power under the February 20, 1941, power of attorney to give away an asset of the grantor's.

F. Plaintiff has no "interest, right or title" in the real property within the meaning of Section 9(a) of the Act, as amended.

G. The complaint should be and is hereby dismissed. An appropriate order approved as to form will be signed upon presentation.