# ARTHUR V. KING *v.* HOWARD R. BANKERD

[No. 1758, September Term, 1982.]

*Decided October 6, 1983.*

The cause was argued before GILBERT, C. J., and LOWE and LISS, JJ.

*John R. Clapp,* with whom was *Don F. Ryder, Jr.,* on the brief, for appellant.

*Cleopatra Campbell* for appellee.

Liss, J., delivered the opinion of the Court.

This controversy arose when Howard R. Bankerd, the appellee herein, filed a declaration in the Circuit Court for Montgomery County in which he sought compensatory and punitive damages from Arthur V. King, the appellant.[1]

The declaration alleged a breach of trust and a breach of fiduciary duty owed by King to Bankerd. The joint record extract discloses that Bankerd and his wife were the owners as tenants by the entireties of a property located at 14206 Travilah Road, Rockville, Maryland, which they purchased in 1962. The appellee and his wife resided in the property until July 2, 1966 when as a result of marital problems the wife moved from the premises.

Bankerd remained in the property until July, 1968 when he moved out of the property and "left for the West." Over the course of the next dozen years Bankerd lived at various addresses in Nevada, Colorado and Washington State. Before Bankerd left Maryland in 1968, he executed a power of attorney to the appellant, with whom Bankerd had had business and social contacts while he resided in Rockville. This "first" power of attorney was dated September 1, 1971, and was the forerunner of the subsequent power of attorney which is the subject of controversy herein. Bankerd concedes that from the time he moved from the premises in July of 1968 he paid no funds for taxes, mortgage payments or maintenance and upkeep on the subject property. He also admits that from 1971 until 1975 there was no communication between King and himself.

---

1. The claim for punitive damages was abandoned below and is not before us.

In 1975 King sent a new power of attorney, almost identical with the original, with a covering letter requesting Bankerd's signature on the second power of attorney because the authorities were planning to install sewer facilities adjacent to Bankerd's property.[2] Bankerd signed the new power of attorney and returned it to King. The power was dated October 30, 1975 and read as follows:

KNOW ALL MEN BY THESE PRESENTS, that I, Howard R. Bankerd, hereby make, constitute and appoint ARTHUR V. KING, my attorney for me, and in my name to convey, grant, bargain and/or sell the property designated in the Montgomery County land record as Lot 9 of an unrecorded subdivision as recorded in Liber 3027 at folio 293, situated at 14026 Travilah Road, Rockville, Maryland on such terms as to him may seem best, and in my name, to make, execute, acknowledge and deliver, good and sufficient deeds and conveyances for the same with or without covenants and warranties and generally to do and perform all things necessary pertaining to the future transfer of said property, and generally to do everything whatsoever necessary pertaining to the said property.

An affidavit before a notary public was attached to the power of attorney. Bankerd had no further communication with King from October, 1975 until 1978.[3]

In September of 1977, Bankerd's wife, who had been living in and maintaining the subject property since 1968,

---

**2.** The letter advised King that the Washington Suburban Sanitary Commission was planning to intall a sewer which might involve Bankerd's property. The letter said: "For this purpose [the installation of sewer] I enclose another power of attorney which will allow me to act for you in a general way as well as any transfer of the property. You, of course, may be assured that I would do nothing detrimental to your interests."

**3.** In returning the 1975 power of attorney, Bankerd thanked King for his continued interest on Bankerd's behalf and stated that he considered King "as a friend first and his lawyer next." He advised King that if he survived his wife King would have a job clearing up the Travilah Road property.

requested King to exercise the powers granted to him under the powers of attorney and to transfer the appellee's interest in the property to the wife. King indicated that he knew that Mrs. Bankerd was about to retire; it was his opinion that the wife was "saddled" with a property she could not sell or mortgage and that she was in effect "trapped" by the property. King therefore attempted to locate Bankerd. The record indicates that King wrote Bankerd on at least two occasions at a hotel in Carson City, Nevada where Bankerd had been living. One letter was returned and the other brought no response. A third letter was sent to another Carson City address and this one was also returned. The record indicates several other efforts to obtain Bankerd's address, all of them unavailing. There was testimony by King before the presiding judge that King had represented Bankerd for ten years, that he, King, believed that Bankerd "didn't give a damn" about the property, and that King believed Bankerd had abandoned his interest in the property.

King stated that his opinion was based on his knowledge that Bankerd and his wife were not divorced; that Bankerd had contributed nothing for the payment of the mortgage or the maintenance of the property since 1968; that Bankerd's children had lived in the property with Mrs. Bankerd (their stepmother) for several years after 1968; that the property had been left in a deteriorated condition in 1968 and that the wife had expended time and money in repairs; that Bankerd was approximately 69 years of age and might well be deceased and that if he were alive it appeared to him that Bankerd had abandoned his interest in the property. King, being aware of the language of the power of attorney which gave him the power "to convey, grant, bargain and/or sell" the subject property "on such terms as to him may seem best," conveyed Bankerd's interest in the property to Bankerd's wife by deed dated June 21, 1978. No consideration was paid by the wife nor did King receive any compensation for the conveyance on behalf of Bankerd. The property has since been sold to a bona fide purchaser for the sum of $62,500.

On April 30, 1981, Bankerd filed the present case against King and after discovery proceedings had been completed each party moved for summary judgment. On August 12, 1982, the trial judge heard arguments from counsel and granted summary judgment to Bankerd against King and awarded damages in the amount of $13,555.05 on the ground that King had negligently violated the fiduciary relationship which existed between them. King promptly filed the within appeal and sought to raise the sole issue whether the trial judge erred in granting Bankerd's motion for summary judgment.

Appellant argues that the trial court erred in granting appellee's motion for summary judgment. Initially, he contends that there was a genuine dispute between the parties as to whether the appellee had abandoned his interest in the property here involved, and secondly, that the summary judgment should have been denied on the basis of the doctrine of equitable estoppel. We find no merit in either contention.

There was nothing before the trial judge which established that there was a genuine dispute between the parties on the alleged abandonment of the appellee's interest in the subject property. Appellant's dealings with the appellee established that it was not unusual for the appellee to remain incommunicado for long periods of time. There was no communication between the parties between 1971 and 1975, the time between the execution of the original power of attorney and the second one. When King notified Bankerd of the necessity to obtain the second power of attorney there was nothing in their correspondence which even remotely suggested that Bankerd intended to abandon his interest in the property or that King believed Bankerd had such an intention.

The Court of Appeals said in *Messersmith v. Mayor and Common Council of Riverdale,* 223 Md. 323, 326-27, 164 A.2d 523 (1960):

> While an intention to relinquish or part with any kind of property is an essential element of aban-

> donment, the general rule is that title to property cannot be lost without an intention to abandon it, and mere non-user, even though it be long-continued, is not enough in and of itself to establish an abandonment. There must always be some affirmative or straightforward act to indicate an intention to abandon.

The trial judge had no genuine issue as to abandonment before him when he granted the summary judgment.

Similarly, the facts before the trial court generated no issue on the doctrine of equitable estoppel. This defense is a creature of equity whose elements were stated in *Johnson Lumber Company v. Magruder,* 218 Md. 440, 448, 147 A.2d 208 (1959):

> It was educed to prevent the unconscientious and inequitable assertion of rights or enforcement of claims which might have existed or been enforceable, had not the conduct of a party, including his spoken and written words, his positive acts and his silence or negative omission to do anything, rendered it inequitable and unconscionable to allow the rights or claims to be asserted or enforced.

Nothing in the facts would suggest that the conduct of the appellee would make it unconscionable to permit him to claim a breach of the fiduciary duty owed by King to himself.

We conclude that these legal contentions beg the real issue in this case. It is clear that the sole question to be decided by the motion for summary judgment was whether the general power of attorney executed by Bankerd which named King as his attorney-in-fact clothed King with the authority to convey gratuitously to anyone the property owned by Bankerd. Counsel have not been able to furnish us with any Maryland authority discussing this issue nor have we been able to find such authority. There are, however, a number of cases decided in other jurisdictions where the issue has been raised and determined.

In *Mercantile Trust Company v. Harper,* 622 S.W.2d 345 (Mo. App. 1981) the Court had before it the question of the interpretation of a broad general power of attorney. The Court said at p. 349:

> Well established rules of interpretation of powers of attorney dictate that broad, all-encompassing grants of power to the agent must be discounted. Restatement (Second) of Agency, § 34, Comment h (1958). Potentially hazardous powers, such as the power to borrow money on behalf of the principal, cannot be inferred from the power of attorney; it must be reasonably clear that the principal intended to grant such power. *Id.* Language in a power of attorney that apparently grants broad power to convey the principal's property, such as the power to convey "as sufficiently as [the principal] could do personally," is deemed to be mere "window dressing" and must be disregarded. W. Seavey, Handbook of the Law of Agency § 21 (1964).

The Court noted that the Supreme Court of the United States held more than a century before that a broad power of attorney to "transact all matter of business" did not empower an agent to sell a principal's stock, *Hodge v. Combs,* 66 U.S. 192, 17 L.Ed. 157 (1861).

In *Johnson v. Fraccareta,* 348 So.2d 570 (Fla. App. 1977) the Florida Court of Appeal for the 4th District had before it a case in which a decedent owned real property during her lifetime and executed a power of attorney appointing Delores Fraccareta as her attorney-in-fact giving Delores the power to "bargain, sell, release, convey and mortgage lands - - - upon such terms and conditions and under such terms and conditions and under such covenants, as she shall think fit and also for me and in my name as my act and deed to sign, sell, execute, and deliver and acknowledge such deeds - - -"

As attorney-in-fact, Delores executed a warranty deed conveying the decedent's property to two of her relatives as tenants by the entireties. The decedent died several months after the execution of the power of attorney and the conveyance. Johnson, administrator *ad litem* of the estate of the deceased, sued the attorney-in-fact to have the deed vacated and set aside. The trial court granted summary judgment in favor of the attorney-in-fact and the grantees under the deed. In reversing, the Court said:

> The appellant contends that a general power of attorney does not authorize the agent to make a gift of the principal's property. Although it appears that there is no Florida case law directly on point, the general rule announced in other jurisdictions is set forth in 73 A.L.R. 884:
>
> > "A general power of attorney authorizing an agent to sell and convey property, even though it authorizes him to sell for such price and on such terms as to him shall seem proper, implies a sale for the benefit of the principal, and *does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal."* (Emphasis in original).
>
> See also *Miyuki Okihara v. Clark,* 71 S.Ct. 319 (D.Haw. 1947); *Fujino v. Clark,* 71 F.Supp. 1 (D.Haw. 1947), aff'd. 172 F.2d 384, 9 Cir., cert. den. 337 U.S. 937, 69 S.Ct. 1512, 93 L.Ed. 1743; *Manna v. Pirozzi,* 44 N.J. Super. 227, 130 A.2d 55 (1957); *Shields v. Shields,* 200 Cal.App.2d 99, 19 Cal.Rptr. 129 (1962); *Bertelsen v. Bertelsen,* 49 Cal.App.2d 479, 122 P.2d 130 (1942); *Thompson v. Thompson,* 190 Ga. 264, 9 S.E.2d 80 (1940).

Agency, Restatement of Law, Second, § 39 states: "Unless otherwise agreed authority to act as agent includes only authority to act for the benefit of the principal." The Court of Appeals recognized this principle in the early case of

Adams Express Co. v. Trego, 35 Md. 47, 68-69 (1872) when it said:

> Even if a general discretion is vested in the agent, it must not be deemed to be unlimited. But it must be exercised in a reasonable manner, and cannot be resorted to in order to justify acts, which the principal could not be presumed to intend, or which would defeat and not promote the apparent end or purpose, for which the power was given.

The case of *Kaname Fujino v. Clark, Attorney General,* D.C.Haw., 71 F.Supp. 1, 2, *affirmed* 9 Cir., 172 F.2d 384, *cert. denied,* 337 U.S. 937, 69 S.Ct. 1512 (1947), was an Alien Property Custodian matter. A Japanese national had admittedly intended to make a gift of certain real property to his son. He executed a general power of attorney which authorized his attorneys-in-fact among other things "to buy, take on lease and otherwise acquire, and to hold, sell, mortgage, hypothecate, pledge, lease and otherwise dispose of, and in any way and every way and manner deal with real property, leaseholds, and other interests in real property * * *." The attorneys-in-fact, acting for their principal, executed a deed for the real property by which they purported to convey it to the son as a gift. The District Court held that the power of attorney did not authorize the attorneys-in-fact to give away any of their principal's assets. The Court said, 71 F.Supp. at page 4, that *"To authorize a gift of an asset by an agent, the agent must have such a power expressly and clearly conferred."* (Emphasis supplied).

*See also* 2 Am. Jur. *Agency* Sections 31 and 145; 2 C.J.S. *Agency* 2d Ed. Section 114, p. 1132.

We are convinced that there was no genuine dispute between the parties, and that when the appellant undertook to convey the property here involved to the appellee's wife without compensation he was guilty of a breach of the fiduciary duty he owed the appellee even though he purported to act pursuant to the powers granted him by the general power of attorney. We hold that the broad language

of the power of attorney did not authorize the conveyance without consideration and that under the circumstances the entry of the summary judgment in favor of the appellee was not error.

*Judgment affirmed.*
*Costs to be paid by appellant.*