SQUAW MOUNTAIN CATTLE COMPA-
NY, a Wyoming Corporation; Springer
Jones; and Donna Jones, Appellants
(Defendants),

v.

Pat BOWEN; Bernard Raymond
McGuire, Sr., Irrevocable Trust, Ber-
nard Raymond McGuire, Jr. and Thom-
as Michael McGuire, Trustees; and
Burnett Ranches, a Wyoming Partner-
ship, acting by and through Two Bar–
Muleshoe Water Company, a Wyoming
Corporation, Appellees (Plaintiffs).

Pat BOWEN; Bernard Raymond
McGuire, Sr., Irrevocable Trust, Ber-
nard Raymond McGuire, Jr. and Thom-
as Michael McGuire, Trustees; and
Burnett Ranches, a Wyoming Partner-
ship, acting by and through Two Bar–
Muleshoe Water Company, a Wyoming
Corporation, Appellants (Plaintiffs),

v.

SQUAW MOUNTAIN CATTLE COMPA-
NY, a Wyoming Corporation; Springer
Jones; and Donna Jones, Appellees
(Defendants).

Nos. 90–86, 90–87.

Supreme Court of Wyoming.

Feb. 6, 1991.

Thomas S. Smith and Kathleen A. Hunt of Smith (argued), Stanfield & Scott, Laramie, for appellants in No. 90–86 and appellees in No. 90–87.

Rex E. Johnson and D.N. Sherard (argued), Wheatland, for appellees in No. 90–86 and appellants in No. 90–87.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

The minority shareholders in the Two Bar–Muleshoe Water Company (Muleshoe) brought this derivative action against the corporation's majority stockholder and president, Springer Jones, his wife and their ranch corporation, Squaw Mountain Cattle Company, for converting corporate assets. The action resulted from Jones

causing the bulk of a $1.25 million settlement from litigation to be distributed to himself and his relatives. The trial court found generally in the minority shareholders' favor, but declined to assess punitive and exemplary damages. Both parties appeal.

We affirm in all respects.

The defendants below, appellants in case no. 90–86, bring the following issues:

"1. Were Appellant Springer Jones' actions relating to the conduct of litigation properly within his explicit and inherent authority as President of Two Bar?

"2. Were the settlement negotiations improperly categorized by the trial court as 'lost corporate opportunities'?

"3. Was the March 25, 1988, Wheatland Irrigation District resolution improperly categorized by the trial court as a completed settlement offer which should have been submitted to the Two Bar board?

"4. Should the Appellees have been prevented from modifying the distribution formula of the settlement agreement of January 3, 1989, by reason of the doctrine of estoppel, waiver and/or laches?"

The plaintiffs below, appellants in case no. 90–87, raise this issue:

"Considering the actions and conduct of Defendants, did the District Court commit error when it refused to assess punitive and exemplary damages against said Defendants?"

## FACTS

The Two Bar–Muleshoe Water Company owned the land underlying Wheatland Irrigation District Reservoir No. 2. Wheatland Irrigation District (Wheatland) and its predecessor had leased the land from Muleshoe and its predecessor since 1900. Wheatland delivered irrigation water from the reservoir to Muleshoe shareholders as consideration for the lease. Stock in Muleshoe entitled the shareholders to water rights to one acre of land for each share of stock owned. The Squaw Mountain Cattle Company owned approximately 59 percent of the shares in Muleshoe. The Squaw Mountain Cattle Company (Squaw Moun-

tain) is wholly owned by Springer Jones and his relatives. Jones is president of both Squaw Mountain and Muleshoe.

Litigation over the parties' rights and obligations in the lease has spanned many years. *See, e.g., Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318 (1944), and *State ex rel. Squaw Mountain Cattle Co. v. Wheatland Irrigation District*, 728 P.2d 172 (Wyo.1986). In May of 1983, Muleshoe stockholders and directors adopted a resolution authorizing Jones to bring legal action in Muleshoe's name against Wheatland to enforce the terms of the lease. The resolution also allowed Jones to seek damages for crop losses on Squaw Mountain acreage which allegedly resulted from Wheatland's failure to deliver water before and after Wheatland's normal irrigation season. The suit was filed on June 14, 1983 with Squaw Mountain and Muleshoe listed as plaintiffs. Wheatland responded to the suit by filing a counterclaim asserting eminent domain to gain ownership of the land underlying the reservoir.

In 1985, Jones met with the trustees of Wheatland to discuss settling the case. At that time, Jones contended the land underlying the reservoir was worth approximately $1.5 million. Wheatland moved to drop its counterclaim in 1987, but Jones resisted the motion and never shared this information with other Muleshoe shareholders. In February of 1988, Wheatland offered a settlement that included paying Muleshoe $55,000 a year in perpetuity for the land. The offer was not accepted. In March of 1988, Wheatland offered $1 million for the land under the reservoir and $250,000 to Squaw Mountain to settle the case. Wheatland's counsel communicated this offer to Jones' counsel in April 1988. Jones never shared this offer with the Muleshoe shareholders. Instead, on August 31, 1988, Jones presented the settlement as Wheatland offering to pay $1,051,500 to Jones and his relatives for "physical and emotional stress, embarrassment and loss of reputation" caused by the dispute; $116,000 to Muleshoe for the land under the reservoir; with the remaining funds going to pay Squaw Mountain's past due water assessments. Jones and his advisors had formu-

lated this distribution of the funds themselves. Wheatland had not offered the payments as stated by Jones. The Wheatland manager believed that the $1.25 million was going to be distributed as contained in the March 1988 resolution. Jones, nevertheless, told the other Muleshoe members that Wheatland was behind this distribution. Although suggested by Jones in discussions with Muleshoe stockholders as a reason for the settlement offer, none of the proposals to settle jeopardized the Muleshoe members' water rights. These rights had been adjudicated and were appurtenant to land owned by the individual Muleshoe shareholders.

No action was taken at the August 31 meeting. At a September 9, 1988 meeting, Muleshoe's board of directors voted to reject the settlement offer. Springer Jones then voted Squaw Mountain's 59 percent of the outstanding shares in favor of the settlement and declared it accepted. Jones signed the settlement agreement on September 15 as president of both Squaw Mountain and Muleshoe. Shortly after the settlement by Jones, this suit was brought by Muleshoe against Jones and Wheatland. Jones counterclaimed seeking damages from Muleshoe for conspiracy, intentional interference with contract, abuse of process and malicious prosecution. Wheatland was dismissed from the case with prejudice upon stipulation after it deposited the amount of the settlement that Muleshoe could recover.

Following a bench trial, the court found in favor of Muleshoe upon its claims and against appellants upon the counterclaims. The court found that Jones was acting as Muleshoe's agent and, as such, had an obligation to act in Muleshoe's best interests, and that Jones had appropriated for himself a benefit intended for Muleshoe as principal. It declined to assess punitive or exemplary damages against Jones.

## DISCUSSION

I. *Jones' Authority as President of Muleshoe in the Wheatland Irrigation District Litigation.*

▇ A corporation's bylaws and any resolutions adopted by the corporation's board of directors in accordance with the bylaws determines the extent of the president's authority. W.S. 17-1-142 (1977 Repl.) (repealed January 1, 1990, by Wyo. Sess.Laws 1989, Ch. 249, §§ 3 and 6), *see* W.S. 17-16-841 (1989 Repl.). Jones contends that he had full and complete authority as Muleshoe president to settle the Wheatland litigation in the manner attempted. We find no basis in either Muleshoe's bylaws or the resolution to support Jones' contention.

Muleshoe's bylaws contain a single sentence setting out the power of the president.

> "The President shall preside at all meetings of the directors and members and shall have general charge and control over the affairs of the corporation *subject to the board of directors.*" (emphasis added)

The May 30, 1983 resolution adopted by the Muleshoe board of directors authorized Jones to "take such legal action, on behalf of the Company, as is in his sole and absolute discretion deemed necessary, against Wheatland Irrigation District * * *."

First, the resolution authorized Jones to take such legal action as he deemed necessary—there was not specific authority to settle that action for any amount and in any manner he chose. Second, under Muleshoe's bylaws, the directors have no authority to enter into a contract for the sale of corporate assets without written consent of a majority of the stockholders. When this resolution was adopted, no such shareholder consent was granted. Thus, the resolution could not have granted Jones the power to sell the land under the reservoir because the directors did not have the authority to grant him this power. The directors are agents of the corporation. *Beadle v. Daniels,* 362 P.2d 128, 130 (Wyo. 1961). As agents, the directors must act within the scope of their authority. *Snearly v. Hockett,* 352 P.2d 230, 233 (Wyo.1960).

Jones is also unable to look to the September 9 shareholder vote as authorizing

or ratifying the settlement. While it is true that Squaw Mountain voted its 59 percent of the outstanding shares in favor of accepting the settlement, that vote alone was insufficient to permit the corporation to sell the land under the reservoir. The land underlying the reservoir amounted to substantially all the assets of the corporation. The sale proposed under the settlement was not in the regular course of business. Under the statute in effect at the time, a resolution allowing the sale would have required a two-thirds majority vote of the Muleshoe stockholders. W.S. 17–1–502 (1977 Repl.) (repealed January 1, 1990, by Wyo.Sess.Laws 1989, Ch. 249, §§ 3 and 6). The number of shares held by Squaw Mountain and the only shares voted in favor of the sale fell more than 100 shares short of constituting a two-thirds majority. The attempted sale as part of the settlement distribution by Jones of the Muleshoe land underlying the Wheatland reservoir, therefore, was unsanctioned by the requisite number of shareholders.

## II. The Settlement as a "Corporate Opportunity."

■ In his second issue, Jones asserts that the trial court characterized the settlement as a "corporate opportunity" and that this was improper. In Jones' brief, it is stated that "[e]ither Springer Jones is one of the shrewdest land negotiators around, or there is more to that preliminary proposal than meets the Appellees' eyes." The argument to support this contention is hypertechnical and is presented for the first time in this appeal. The question of misappropriation of a "corporate opportunity" was not raised below nor was it litigated. Appellees' complaint does not allege a misappropriation of a "corporate opportunity." Nor do we find any indication that the trial court based its decision on this or even used the phrase "corporate opportunity" in its findings. Whether Jones' argument has merit, therefore, is something we will not pursue, for we do not address issues raised for the first time on appeal. *Matter of Estate of McCue*, 776 P.2d 742, 745 (Wyo. 1989).

■ We have considered that perhaps Jones' contention concerning error in applying the corporate opportunity doctrine is rooted in the following statement made by the trial court:

"I see nothing particularly incongruous about the minority shareholders in the Two Bar Muleshoe Company believing that the offer of $1 million for their asset is a fair offer and should be accepted but taking considerable issue when someone decides that although the million dollars was a fair price, the proceeds will be paid to someone else."

This statement relates not to the "corporate opportunity doctrine" but the general duties of corporate loyalty and fiduciary responsibility. Corporate officers and directors have a fundamental duty of loyalty and fiduciary responsibility to their corporation. *Lynch v. Patterson*, 701 P.2d 1126, 1132 (Wyo.1985); *Beadle*, 362 P.2d at 130. The "corporate opportunity doctrine" is one aspect of the loyalty requirement. *See* 3 W. Fletcher, *Fletcher Cyclopedia of Corporations* § 861.1 (1986). Our application and discussion of this doctrine has been quite limited. *See, e.g., Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174 (Wyo.1986); and *see* Gelb, *Corporate Disloyalty—A Wyoming Case and the ALI Project*, 21 Land & Water L.Rev. 111 (1986). This is not an appropriate case to consider the doctrine.

Jones testified he was trying to do what he thought was best for the Squaw Mountain Cattle Company, not Muleshoe, when he decided to distribute $1,051,500 to himself and his relatives. The court found that Jones breached duties of loyalty and fiduciary responsibility to Muleshoe. We agree with the trial court that the record supports Jones' breach of these duties.

## III. Jones' Duty to Share Information Concerning Wheatland's March 1988 Resolution with the Muleshoe Board.

■ Jones contends Wheatland's March 1988 resolution was not a bona fide offer and, therefore, he was not obligated to share information about it with the Mu-

leshoe Board. It is immaterial whether this constituted an offer because his failure to disclose this information amounted to a breach of his fiduciary duty.

As a fiduciary, Jones had a duty to faithfully and honestly represent Muleshoe. *Lynch*, 701 P.2d 1126; *Walter v. Moore*, 700 P.2d 1219, 1224 (Wyo.1985). As we stated in *Voss Oil Co. v. Voss*, 367 P.2d 977, 979 (Wyo.1962):

> "[W]hen it is shown that an officer has acted both for himself and for the corporation, the burden is cast upon him to show that the transaction was open, fair, and honestly made and that he did not profit to the disadvantage of the corporation. One of the tests of 'fairness' in transactions of this kind is whether there has been full disclosure."

The objective of this requirement is "to prevent insiders from using special knowledge which they may have to their own advantage and to the detriment of stockholders." *Lynch v. Vickers Energy Corp.*, 383 A.2d 278, 281 (Del.1977).

Jones does not dispute that he failed to disclose this information to the Muleshoe shareholders and directors. This lack of candor by itself amounts to a breach of his duty. However, he went so far as to attempt to hide it from them by falsely placing the responsibility on Wheatland for determining that the bulk of the settlement money should go directly to Jones and his relatives. We find no merit in his claim that he had no duty to disclose this information because he contends it was not a bona fide offer. That contention does not excuse his breach any more than it explains his deception in dealing with the shareholders and directors.

## IV. Estoppel, Waiver and Laches.

■ Estoppel, waiver and laches are affirmative defenses which must be pleaded. *Murphy v. Stevens*, 645 P.2d 82, 93 (Wyo.1982); *Wood v. Trenchard*, 550 P.2d 490, 493 (Wyo.1976). Equitable estoppel is applied to prevent an injury arising from actions or declarations which are acted upon in good faith and which would be inequitable to retract. *Roth v. First Se-*

*curity Bank of Rock Springs*, 684 P.2d 93, 96 (Wyo.1984). It is applied to prevent fraud, actual or constructive, and to promote the ends of justice. *Garlach v. Tuttle*, 705 P.2d 828, 829 (Wyo.1985). Waiver is the intentional relinquishment of a known right. *Ranger Insurance Co. v. Cates*, 501 P.2d 1255, 1259 (Wyo.1972). Laches is a form of equitable estoppel based on a unreasonable delay by a party in asserting a right. *Murphy*, 645 P.2d at 91.

■ The appellees authorized Jones to pursue the litigation in the corporation's name. Jones contends that because they were not involved personally in the matter, one of these three affirmative defenses should be available. What Jones ignores is that he engaged in this litigation as the appellees' agent. In order for an agent to successfully assert estoppel against a principal, more than a showing that the principal allowed the agent to operate in the manner the principal expected is necessary. *King v. Bankerd*, 55 Md.App. 619, 465 A.2d 1181 (1983). Once the principal learns of actions by the agent against the principal's interest, the principal has a duty to take action. *Towle v. Norbest Turkey Growers Assoc.*, 275 F.2d 196, 202 (9th Cir.1960). Estoppel may be asserted if a principal acquiesces in an agent's self-dealing. *Gutting v. Jacobson*, 184 Neb. 402, 167 N.W.2d 762, 765 (1969).

■ The appellees learned of Jones' self-dealing in August of 1988 when he presented to them the settlement offer skewed in his favor. Upon learning of this, they did not acquiesce but took immediate action to correct the self-dealing by filing this suit. Estoppel and laches are not available, for Muleshoe shareholders did not acquiesce or unreasonably delay in asserting their claim. Lacking a showing of either of these, it follows that the plaintiffs exhibited no intention to waive their rights.

## V. Punitive and Exemplary Damages.

On cross-appeal, the appellees argue that the trial court "commit[ted] error when it refused to assess punitive and exemplary damages" against the appellants. There

must be a showing of clear abuse of discretion for us to reverse a trial court's determination regarding the award of punitive damages. *Cates v. Daniels*, 628 P.2d 862, 868 (Wyo.1981). Appellants acknowledge that the award of punitive or exemplary damage is within the discretion of the trial court. However, they urge us to find that the trial court abused its discretion.

We review most questions concerning a trial court's abuse of discretion by asking " 'whether the court could reasonably conclude as it did.' " *Oien v. State*, 797 P.2d 544, 550 (Wyo.1990), quoting *Noetzelmann v. State*, 721 P.2d 579, 583 (Wyo.1986). If we find that it could, we will uphold the trial court's exercise of discretion. *Oien, supra.*

 Punitive damages or exemplary damages are for the purpose of publicly condemning some notorious act or inaction, punishing a defendant and serving as a warning and deterrent to others. *Sinclair Oil Corp. v. Columbia Casualty Co.*, 682 P.2d 975, 978 (Wyo.1984). We have used the terms "punitive damages" and "exemplary damages" separately to refer to this concept. *See, e.g., id.; Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo.1979). The terms have an identical meaning and can be used interchangeably. *See* Black's Law Dictionary 390 (6th ed. 1990).

We have said with respect to a party's entitlement to punitive damages that

"There is no right in any party to punitive damages. Phrased in another manner, which would dictate the same result, an award of such damages is optional or solely in the discretion of the fact find-

er." *Mader v. Stephenson*, 552 P.2d 1114, 1115 (Wyo.1976) (citations omitted).

In *Weaver v. Mitchell*, 715 P.2d 1361, 1370 (Wyo.1986), we stated:

"We have approved punitive damages in circumstances involving outrageous conduct, such as intentional torts, torts involving malice and torts involving willful and wanton misconduct." *See also Mayflower Restaurant Co. v. Griego*, 741 P.2d 1106, 1115 (Wyo.1987).

In this case, the egregiousness of the defendant's conduct does not justify substituting our judgment for that of the trial court. In *Cates v. Daniels*, 628 P.2d at 867–68, the trial court found that the realtor defendants had failed to remit the proceeds from a sale of property of the plaintiffs. Wyoming statute 33–28–114 provided for punitive damages "as may be determined by the court" in such situations. The trial court did not award punitive damages, and we found no abuse of discretion. We cannot say that the circumstances here are more egregious than those in *Daniels*, nor can we say that the trial court could not reasonably conclude as it did under the circumstances. There was, therefore, no abuse of discretion, and we affirm the order of the trial court denying punitive damages.

Having responded to the issues raised and finding no error, the judgment entered is,

Affirmed.