FRANCIS A. SMITH ET AL. v. H. W. POWELL ET AL.

No. 285.

1. **Limitation—Pleading—Trespass to Try Title.**—The defendants in their answer pleaded the value of the services of the attorneys, under whom they held, and to whom the land had been deeded by some of the heirs for legal services in the recovery of the league in the litigation which ended about 1860, and prayed that if the land were recovered by the plaintiffs, that they have judgment for a reasonable sum for such services, and that the same be adjudged an equitable lien on the land. To which a demurrer setting up limitation was interposed. *Held,* the demurrer should have been sustained.

2. **Same—Parties.**—As defendants claimed the specific land sued for, it was error to overrule the special demurrer to that part of the answer which set up that all the parties were tenants in common with all the different owners of the entire league, and asking that the suit abate until all such part owners of the whole league, embracing the land sued for, be made parties.

3. **Evidence.**—The testimony of the husband respecting deeds executed jointly by him and his wife, "that he requested his wife to join with him in the deeds, in order to convey the interest inherited by her from her father's and mother's estate," is inadmissible. The deeds were the best evidence, and could not be explained by parol testimony.

4. **Wife's Separate Estate — Evidence.**—See facts under which it is held, that the husband had no authority to ratify a contract never entered into by his wife, or to bind her separate estate fourteen years after the contract was made, without being joined by her with privy acknowledgment. Testimony as to the wife's repudiation of such unauthorized acts of her husband was admissible. The deed executed by the husband for himself and as agent for his wife was binding upon the husband, and was properly admitted in evidence against him, but the court should have instructed the jury that it was not binding upon the wife, either as a conveyance of her separate estate or in estoppel.

5. **Evidence—Abstract of Title—Power of Attorney.**—Upon proper notice defendants filed an abstract of their title. At the trial, a power of attorney not included in the abstract was admitted in evidence over objection. *Held,* error. Moreover, a power of attorney giving authority to bargain, sell, and

convey land for money or such other consideration as to the grantee therein may seem to the grantor's advantage, and to receive the pay or consideration therefor, confers no authority upon the agent to convey the land without consideration, or in settlement of a pre-existing claim, either legal or equitable.

6. Void Contract—Partition.—See opinion for a contract to give attorneys an interest in land for their services in recovering it, held void as to the heirs, and a deed subsequently made to the attorneys held not a partition.

7. Married Women—Estoppel in Pais.—A married woman can not be estopped in pais unless her acts were intentional and fraudulent.

8. Limitation—Tacking Disabilities.—The period of limitation can not be extended by the connection of the disability of minority with that of coverture.

Appeal from Navarro.   Tried below before Hon. Rufus Hardy.

*H. L. Stone* and *Lee & Blackman*, for appellants.— 1. The court erred in overruling the special demurrer of plaintiffs and intervenors pleading statute of limitations against any recovery by defendants for services performed under contract made in 1855.   Rev. Stats., arts. 3203, 3305.

2. As John R. Smith executed this deed simply as attorney for his wife, having no interest in the land and receiving no consideration therefor, he could not be bound by clauses of warranty therein so as to affect an interest in the land subsequently inherited from his wife at her death.   Davis v. Agnew, 67 Texas, 217.

3. The court erred in admitting in evidence, over the objection of plaintiffs and intervenors, the following instrument, to-wit:

"*State of Texas, County of Navarro.*—Know all men by these presents, that we, William Clark, of the county of Nacogdoches, and D. M. Prendergast and Alexander Beaton, have this day entered into the following agreement, to-wit:   The said Beaton and Prendergast agree to prosecute and attend to the interest of the said Clark as the next friend of the minor heirs of William H. Harris, deceased, in the District Court of Navarro County, in a suit in which Charles Q. Haley is plaintiff and others are defendants, and the said minors are intervenors, until its final termination. For which services the said Clark agrees and promises to pay to the said Beaton and Prendergast the sum of $25, certain, at the termination of the suit in the District Court, and $50 additional if carried to the Supreme Court; and in case said intervenors succeed in said suit, said Clark guarantees to the said Beaton and Prendergast one-fourth of the league of land in controversy, of average value with the other three-fourths.

" Given under our hands and scrolls for seals, this 27th day of November, 1855."

Because same was not made nor pretended to be made on behalf of either plaintiff or intervenor, nor does it attempt to bind either of them, as plaintiff's ancestor, F. A. Smith, was at that time a married woman,

and intervenors were not heirs of W. H. Harris, deceased; and because the instrument does not attempt to convey land, nor to bind anybody to convey land in the future. Johnson v. Taylor, 43 Texas, 121; Stone v. Ellis, 69 Texas, 325.

4. The power of attorney, not being relied on by defendants, as shown by their abstract of title, should not have been admitted in evidence. Sayles' Civ. Stats., arts. 4796, 4797.

5. The power to sell land does not carry with it the power to convey land in discharge of a debt or supposed debt. Frost v. Cattle Co., 81 Texas, 505.

6. Under the contract of November, 1855, Clark agrees, not as the next friend or representative of the minor heirs of Harris, but for himself, to pay certain sums of money to Beaton and Prendergast, and guarantees for himself one-fourth of the league of land to them if successful in the suit. The contract had no force or binding effect, and was void as to Francis A. Smith and Emma J. Simpson, and could not be ratified by them.

7. As Beaton and Prendergast owned no interest in the Friar league prior to the deed of W. H. Harris to them, of November 24, 1867, said deed could not be considered in law a partition; and the fact that Mrs. Smith joined her cotenant in selling off the balance of said league could not be held to estop her from claiming her interest in the land conveyed by the deed of November 24, 1867, nor would said fact be a ratification of what her joint tenants had previously done by said deed. Davis v. Agnew, 67 Texas, 213; Johnson v. Bryan, 62 Texas, 623; Steed v. Petty, 65 Texas, 490; Byrum v. Preston, 69 Texas, 287.

*Frost & Etheridge,* for appellees.—1. John R. Smith occupied the position of trustee as to his wife's separate property, and as such it was not only his right, but his duty, to employ, in good faith and for reasonable compensation, attorneys to protect his wife's separate property rights; and he could, if he saw proper, ratify and adopt a contract made for her benefit by another; and his deed, as attorney for his wife, was admissible to show an adoption of the Clark contract by John R. Smith and wife. Rev. Stats., art. 2851; Richardson v. Hutchins, 68 Texas, 81.

2. Beaton and Prendergast having gone into possession of the land sued for, under a conveyance discharging equitable charges thereupon, are entitled, when the conveyance is called in question, to assert their original equitable charges against the land, and stale demand has no application to their assertion of such equities. Robertson v. Du Bose, 76 Texas, 1; Howard v. North, 5 Texas, 290; Northcraft v. Olliver, 74 Texas, 162.

3. If the services which constituted an equitable charge upon the land were equal in value to the land itself, the contract, though voidable, will

not be disturbed. A contract of either a minor or married woman for necessaries will not be set aside unless it is shown to be unreasonable. Askey v. Williams, 74 Texas, 294.

4. Beaton and Prendergast being the first purchasers from those heirs of Harris who were sui generis, and who had sufficient interest remaining to protect their cotenants, will be protected; and all subsequent purchasers must be brought in, and a recovery, if at all, be had against them in the inverse order of their purchase; and if all of the heirs of Harris, with knowledge of these facts, sold off all of the residue of the league, they have no right of recovery against Beaton and Prendergast or their vendees. Arnold v. Cauble, 49 Texas, 527; Peak v. Swindle, 68 Texas, 252.

5. The conveyance by John R. Smith, for himself and as attorney for his wife, was admissible as evidence of a parol partition between Beaton and Prendergast and their cotenants, Smith and wife; the husband having the power, in good faith, to represent the wife in parol partition. Wardlaw v. Miller, 69 Texas, 395.

6. The power of attorney from Simpson and wife to Harris, and the deed from Harris to Beaton and Prendergast thereunder, were admissible, because the power was to sell for money or other consideration, and the conveyance was made in satisfaction of legal services rendered, constituting an equitable charge, and never called into question, although of record and being acted upon until after a lapse of twenty years.

LIGHTFOOT, Chief Justice.—This suit was brought by appellant Francis A. Smith, joined by her husband John Smith, for four-fifteenths of about 1300 acres of land in the Enoch Friar league of land in Navarro County. Francis A. Smith died pending the litigation, and appellants, as her heirs, were made parties.

After the institution of the suit, Emma J. Simpson, joined by her husband, A. I. Simpson, intervened, and claimed as against defendants one-tenth of the land in controversy. Defendants, after pleading the general issue, plead specially, that in 1855 the Enoch Friar league, being owned by the heirs of W. H. Harris (Francis A. Smith being one of them), became involved in litigation in the case of Haley v. Powell, and they employed Beaton and Prendergast, attorneys, to represent them, and in addition to certain other fees, agreed to give them a contingent fee of one-fourth of the league, and that after the suit was decided, they did convey to them 200 acres for H. W. Powell, to be used in the settlement of said suit, and 1100 acres of said league as their portion; and ever since April 23, 1860, they and their vendees have held, used, and claimed said land as their own. They also plead, that plaintiffs were estopped by accepting the terms of the compromise; by deeding off the balance of the league, calling for their deed, which they claim as a partition; by acquiescence for a great number of years while defendants were making valu-

able improvements. They also plead the statute of limitation of three, five, and ten years; improvements in good faith, and the value of their services in the case of Haley v. Powell, in 1855, which they claim to be an equitable charge on the land.

By supplemental petition, plaintiffs and intervenors demurred generally and specially to the matters set up in defendants' answer, and in reply to the statute of limitation plead by defendants, plead their coverture; they denied the allegations in said answer, and plead limitations against any moneyed demand for services performed; and stale demand against any recovery on account of any contract or obligation made by the heirs of Harris with Beaton and Prendergast.

Defendants, by supplemental answer, demurred generally and specially to the matters set up in the supplemental petitions of plaintiffs and intervenors, and denied the allegations therein; and in reply to the plea of stale demand, they alleged that the equities relied on by them had never been called in question until the institution of this suit.

The cause was tried at the April Term of court, 1891, and all demurrers were overruled by the court, and the trial resulted in a judgment for the defendants.

Plaintiffs and intervenors have appealed.

1. The first error insisted upon by appellants is, " that the court erred in overruling the special demurrer of plaintiffs and intervenors, pleading the statute of limitation against any recovery by defendants for services performed under contract made in 1855."

The defendants, in their answer, set up the value of the services of Beaton and Prendergast as attorneys in the case of Haley v. Powell, the litigation in which was ended about 1860, and prayed that if the land was recovered that they have judgment for a just and reasonable sum for such services, and that the same be adjudged an equitable lien on the land. To this the demurrer of plaintiffs setting up limitation was interposed, and clearly the demurrer should have been sustained.

2. We think the court erred in overruling the special demurrer of plaintiffs to that part of the answer which sets up that defendants and plaintiffs and intervenors are tenants in common with all the different owners of the Enoch Friar league, and asking that the suit abate until all of such parties be brought in, because the defendants claim the specific land sued for, and claim under deeds from such parties or their vendors, and have set up no valid claim to any other part of the league, and seem to have made no effort to bring in such parties by cross-bill or otherwise. Defendants certainly have no right to delay the plaintiffs' case, or force them to make such useless parties in the contest for the land in controversy.

3. The fifth assignment of error attacks the ruling of the court in excluding the testimony of John Smith, " that after he bought the interest of

the joint owners with his wife in the Friar league, that in selling off the same he made the trades, and that he requested his wife to join with him in the deeds made to the parties, in order to convey the interest inherited by her from her father's and mother's estate." The ruling of the court in excluding this testimony was not error. The bill of exceptions does not state the ground of the objection nor the ground of the court's ruling, and is defective; but the deeds from Smith and wife would be the best evidence, and can not be explained by parol testimony; nor are the reasons of the wife for joining in the conveyances material to any issue in this case.

4. The sixth assignment of error is as follows: "The court erred in refusing to allow plaintiffs to prove by the witness John R. Smith, that after he had executed the deed for himself and as attorney for his wife to Beaton and Prendergast, while in Navarro County, that on his return to Gonzales County, and informing his wife, F. A. Smith, of his action in the matter, that she objected to it; and that in the next year, when they had moved to Navarro County, that Beaton and Prendergast, on their arrival, tried to get his wife, F. A. Smith, to join the witness in conveying said land to them, and that she refused to do so, and had continuously refused ever since to make said conveyance."

Francis A. Harris married Smith in December, 1852, and remained a married woman until after the suit was brought. Beaton and Prendergast, attorneys, were employed by one William Clark, who claimed to act as the next friend for the minor heirs of W. H. Harris, about 1855, to represent them in the case of Haley v. Powell, in which suit the title to the Friar league was involved. They did so, and the litigation was ended about 1860. The bill of exceptions shows that the witness John R. Smith, who then lived in Gonzales County, learned for the first time in 1868 of his wife's interest in the Friar league, and in 1869 he executed a deed to Beaton and Prendergast, for himself and as agent for his wife, for the land in controversy. The appellees endeavored to show acts of ratification and estoppel against the wife, and these were issues in the case. The bill of exception shows, " that at said time, at the request of Beaton and Prendergast, he (Smith) signed the deed to them, signing his own name and his wife Francis A. Smith's name to said deed." It was proper for plaintiffs to prove that when the husband reported to Mrs. Smith what he had done, that she objected to it, and that when Beaton and Prendergast endeavored to get her to sign the deed she refused to do so, and has ever since refused. This testimony being relevant and material, the court erred in excluding it.

The argument of appellees, that the husband was the trustee for his wife's separate estate, and that it was his right and duty to employ counsel for the defense of it, has no application to the facts of this case; because the husband did not know of his wife's interest until eight years

after the litigation was ended, and the contract under which the defense was made was executed " by Clark, as the next friend of the minor heirs of William Harris, deceased," in 1855. At that time Francis A. Smith was a married woman, and there was no pretense that such contract was made for her or on her behalf, or that she was in any manner bound by it. The husband had no authority to " ratify " any such contract, and bind his wife's separate estate, fourteen years after it was made, without being joined by her, with privy acknowledgment, as required by law. The argument that the legal services were necessary and constituted an equitable charge on the land is equally untenable.

We have no doubt that Beaton and Prendergast, under the contract with William Clark as next friend for the minor heirs of W. H. Harris, deceased, rendered their client valuable service, and there might have been a moral obligation upon each part owner of the Friar league to come in and help to pay them; but from the standpoint of a contract, either express or implied, we can see no legal obligation or equitable charge upon the land which binds the married woman to pay either land or money.

5. Appellant complains, in the seventh assignment, of the admission of the deed executed by John R. Smith, for himself and wife, to Beaton and Prendergast, October 26, 1869, claiming that it is not admissible as against John R. Smith individually. Although this deed was not binding upon the wife or her separate estate, it was binding upon Smith individually, and was properly admitted in evidence as against him; but the court should have instructed the jury that it was not a valid conveyance of the separate estate of the wife, Francis A. Smith, and was in no sense binding upon her, either as a conveyance or in estoppel.

6. The ninth assignment of error is as follows: " The court erred in admitting in evidence the testimony of William Croft, Esq., and D. M. Prendergast, Esq., as to the value of the services of Beaton and Prendergast in the case of Haley v. Powell et als.; because same was immaterial; and because same was not performed at the instance or request of plaintiffs or intervenors or their ancestors; and because in no event were the plaintiffs or their ancestors or intervenors responsible to said parties for their services, as shown by bill of exceptions number 5, here referred to and made a part hereof."

Under the views we take of the case, the value of the services of Beaton and Prendergast is not material, and this testimony should have been excluded.

7. The tenth assignment of error is upon the admission of the contract between William Clark, as next friend of the minor heirs of W. H. Harris, deceased, and Beaton and Prendergast, dated November 27, 1855, for the services of the latter in the Haley suit, whereby Clark guarantees to them one-fourth of the league of land if successful. It appears that

Francis A. Smith was at that time a married woman, and intervenor Emma J. Simpson was not one of the heirs of W. H. Harris, nor was she a party to the suit. The agreement did not purport to be made for or on behalf of either of them, and should have been excluded.

8. The eleventh assignment of error attempts to embrace a large number of deeds, and is too general. It can not be considered under the rules.

9. The twelfth assignment of error objects to the introduction of the power of attorney from E. J. and A. I. Simpson to W. H. Harris, and to the deed made under it, because, under proper notice from plaintiffs and intervenors, the defendants filed an abstract of their title, not including this power of attorney. The statute requires, where an abstract of title has been demanded and filed, that " in all cases the documentary evidence of title shall at the trial be confined to the matters contained in the abstract of title." Rev. Stats., art. 4799. Upon this ground the testimony should have been excluded.

But the second ground of objection, that the power of attorney only gave authority to *sell* and *convey for a consideration*, and conferred no power upon the agent to make a conveyance without consideration, or in satisfaction of some pre-existing moral obligation, presents a serious question. Powers of attorney must be strictly construed, and the principal will not be bound beyond the plain import of the instrument. Skaggs v. Murchison, 63 Texas, 353; Reese v. Medlock, 27 Texas, 120. In this case the power of attorney of Simpson and wife to Harris gave authority to bargain, sell, and convey land for *money*, or such other consideration as to the grantee therein may seem to the grantor's advantage, and to *receive the pay or consideration therefor*, etc. The deed made under it recites as a consideration the contract made by Clark, as the next friend for the minor heirs of W. H. Harris, with Beaton and Prendergast, in 1855, and the services rendered by them thereunder. Clearly the grantor in the power of attorney contemplated a *sale* of lands, and a consideration to be paid and received, and not merely a conveyance without consideration. Mrs. Simpson had no connection whatever with the contract between Clark and Beaton and Prendergast, and it created no legal or equitable claim against her or charge upon her estate. Even if it had, this power of attorney did not grant power to Harris to convey her land in settlement of it. Frost v. Erath Cattle Co., 81 Texas, 509, and authorities there cited. If there was any act on the part of E. J. and A. I. Simpson after the execution of this deed which would amount to a ratification or an estoppel, and the deed was unobjectionable in other respects, it might have been properly guarded by the court and considered in connection with such other testimony; otherwise it should have been excluded. The record before us does not disclose any acts of ratification on the part of Mrs. Simpson which could be binding upon a married woman. " To estop a

married woman from asserting her rights to land, it is essential that she should be guilty of some positive act of fraud, or else of some act of concealment or suppression which in law would be equivalent thereto." Johnson v. Bryan, 62 Texas, 626.

10. The court correctly charged the jury that William Clark had no power or authority as next friend for the minor heirs of William H. Harris, deceased, to make the contract with Beaton and Prendergast in 1855, agreeing to give them one-fourth of the Friar league of land for their services. The charge, however, was erroneous in that portion which charged that the deed from a portion of the Harris heirs to Beaton and Prendergast was a partition, and upon the subject of the ratification thereof by appellants or their ancestor, Francis A. Smith. The contract of 1855 conveyed nothing whatever, either legal or equitable, and in so far as the heirs were concerned, was wholly void. The services of such attorneys rendered under that contract were in no sense an equitable charge upon the land, and gave them no right whatever to demand any interest therein. The deed from William H. Harris, Jr., J. B. Harris, Theo. M. Kyle, and Emma J. Simpson and husband to Beaton and Prendergast purported to be an original vesting of title in them to the interest of such parties in the tract so conveyed, and was not a partition of land among original part owners.

Appellees' counsel contend that Beaton and Prendergast had acquired a right to an interest in the Enoch Friar league of land under their contract with William Clark in 1855, and that the subsequent conveyance to them by a portion of the Harris heirs was a *partition.* But there can be no partition unless the parties to it are part owners in the property. Beaton and Prendergast had no shadow of claim to any part of the Enoch Friar league of land until they procured the same by the deed from a part of the Harris heirs; hence this deed could in no proper sense be called a partition. If this was only a partition deed, it was not effective for any purpose. In the case of Davis v. Agnew, 67 Texas, 213, Judge Stayton says: "A partition of land between one who owns an undivided interest in it and one who owns no interest whatever, is necessarily no partition, and neither confers upon one nor takes from the other any right, it matters not what may be the form of the instrument by which the intent to partition is evidenced. The very basis for partition is co-ownership, and when this does not exist the instrument which attempts partition is simply void." See, also, Dawson v. Lawrence, 13 Ohio, 546.

Neither this deed nor any other introduced in evidence affected in any manner the right of Francis A. Smith, who was a married woman from 1852 up to the time this suit was brought. The three special charges asked by appellant's counsel were sufficient to call the attention of the court to her rights as a married woman, and the court erred in not charg-

ing the jury fully upon that subject.   There was no testimony showing any act upon her part inconsistent with her claim to her full interest in this property, and nothing authorizing the submission of a charge upon the subject of estoppel against her.   The original Clark contract in 1855 had no reference to her; the services rendered under it had no reference to her; it is not claimed that she ever executed or authorized the execution of any conveyance on her part, or ever in any manner consented to it, or for one moment waived her claim to her full interest in the property.   As a married woman, she can not be estopped in pais, unless her acts were intentional and fraudulent.   Steed v. Petty, 65 Texas, 496; Johnson v. Bryan, 62 Texas, 626; Bige. on Estop., 510.

11.  This disposes of all the questions which we deem it important to notice, except as to the 200 acres tract claimed and set out by metes and bounds, being the tract claimed by H. W. Powell and his vendee, Rogers. It appears from the testimony that this tract was settled upon by H. W. Powell on February 22, 1852, before the marriage of Francis A. Smith. That he first settled there as the tenant of one Prudhome, whose title he purchased, and that he has ever since held, used, occupied, and claimed it.   Francis A. Harris was a minor when he first went upon the land, February 22, 1852; but when she married John R. Smith, in December, 1852, the statute of limitation began to run against her.   She has long since been barred by limitation as against H. W. Powell and those claiming under him as to said 200 acres tract, and the judgment below is affirmed as to them.

As to all the other parties, and the balance of the land sued for, the judgment is reversed and the cause remanded.

> *Affirmed in part, and*
> *Reversed and remanded in part.*

Delivered November 17, 1893.