**VON WEDEL v. McGRATH.**

No. 10016.

United States Court of Appeals Third Circuit.

Argued Feb. 6, 1950.

Decided March 8, 1950.

Peter J. Kooiman, New York City, Russell C. MacFall, Ridgewood, N. J., for appellant.

Robert B. McKay, Washington, D. C. (Harold I. Baynton, Acting Director, Office of Alien Property, Washington, D. C., Alfred E. Modarelli, United States Attorney for the District of New Jersey, Newark, N. J., James L. Morrisson, Washington, D. C., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an equity action under the provisions of Section 9(a) of the Trading with the Enemy Act, 40 Stat. 411, 50 U.S.C.A. Appendix, § 9(a). It sought the recovery of certain personal property vested in the Attorney General as successor to the Alien Property Custodian. The complaint was dismissed below on the ground that it ap-

pears on its face "that the plaintiff has no interest, right or title in the property within the meaning of Section 9(a) of the Act."

The complaint alleges: that plaintiff is a citizen of the United States, the wife of a German national; that on July 5, 1939, she and her husband left this country for a visit to Europe; that prior to departure, the husband, apprehensive that war might break out in Europe prior to their return to this country and that such condition might prevent him coming back to the United States, executed and delivered at New York City a general power of attorney (copy of which is attached to the complaint) to his friend and lawyer Pieter J. Kooiman; that an "express primary object of the giving of the power of attorney was to enable the donee to dispose of all or part of the donor's property in the United States by gift to the plaintiff herein or otherwise, as the attorney in fact might deem best under all the circumstances"; that on September 1, 1939, while plaintiff and her husband were traveling in Germany, World War II started and the husband since then has been prevented, by causes beyond his control, from returning to the United States; that in 1940 Kooiman, as attorney in fact for the husband, transferred to plaintiff by way of absolute gift, property listed in a schedule attached to the complaint; that the property became vested in the Attorney General as successor to the Alien Property Custodian and that plaintiff filed notice of claim for its return. The complaint prays for a decree awarding her the property and for an accounting.

The all important question in the case is whether the power of attorney upon its face authorized a gift of the principal's property. The initial general language of the power appoints Kooiman " * * * to do any and all acts which I could do if personally present, hereby intending to give him the fullest power and not intending by anything hereinafter contained to limit or cut down such full power * * *." Specific powers are then stated, namely, "giving and granting unto him full power to demand, sue for, recover and receive all manner of goods, chattels, * * *" and various other enumerated routine business powers. The instrument concludes by giving the attorney in fact "power and authority to do, execute and perform for me and in my name all and singular those things which he shall judge expedient or necessary in and about the premises, as fully as I, * * *, could do if personally present, * * *."[1] There is no real dispute about

[1] The complete power of attorney, with the exception of the witness clause, reads:

"Know All Men by These Presents:

"That I, Carl J. R. H. von Wedel, being about to depart from the United States for an indefinite period of time, by these presents make, constitute and appoint my friend, Pieter J. Kooiman, of 81 North Hillside Place, Ridgewood, New Jersey, my true and lawful attorney, for me and in my name, place and stead, to do any and all acts which I could do if personally present, hereby intending to give him the fullest power and not intending by anything hereinafter contained to limit or cut down such full power, giving and granting unto him full power to demand, sue for, recover and receive all manner of goods, chattels, debts, rents, interest, sums of money and demands whatsoever, due or hereafter to become due and owing or belonging to me on any account, and to make, give and execute acquittances, receipts, releases and other discharges for the same, and to make, execute, endorse, accept and deliver, in my name or in the name of my said attorney, all checks, notes, drafts, warrants, acknowledgments, agreements and all other instruments in writing of whatsoever nature, as to my said attorney may seem necessary or proper.

"With full power and authority to sell, transfer or do any other act concerning any stocks or bonds which I may have or possess, and to transfer the same in any manner required by any corporation or law; with full power and authority to commence and prosecute any suits or actions or other legal proceedings for any goods, chattels, debts, cause or thing whatsoever, and to prosecute or discontinue the same; and also for me and in my name and stead to appear, answer and defend in all actions and suits whatsoever which may be commenced against me; and also for me and in my name to compromise, settle and adjust with each and every person or persons all actions, accounts, dues and demands, in such manner as my said attorney shall think

this last broad language as appellant in her reply brief concedes that its function is merely to round out the specified powers given by the document.

■ Among the carefully stated ordinary business powers set out in the instrument there is nothing which even implies that the attorney in fact is authorized to give his principal's property away. The authority within the instrument is to handle von Wedel's usual affairs. Under the settled law, that authority does not go beyond the specific subject " * * * even though it contains words in the most general terms extending the agent's authority." Brassert v. Clark, 2 Cir., 162 F.2d 967, 973. Restatement on Agency, Section 37, says: "(1) Unless otherwise agreed, general expressions used in authorizing an agent are limited in application to acts done in connection with the act or business to which the authority primarily relates. (2) The specific authorization of particular acts tends to show that a more general authority is not intended."

The language of Judge Woolley, speaking for this Court, in Lanahan v. Clark Car Co., 3 Cir., 11 F.2d 820, 824, is very much in point. He said:

"We construe the general and specific provisions of the power of attorney in the light of the familiar principle of law that general powers in such instruments are limited by the specific powers therein granted. As we read the writing we gather that the donor intended to give, and did give, his attorney in fact every power incident to the management of his business, even, conceivably, the power to sell and convey property if in the management of his business that should become necessary. But in a power to conduct a business there is no implication of a power to dispose of it and this is particularly true of the instrument under consideration where if any such power can be found it is among the general powers. As these are limited by

the specific powers and as the specific powers quite clearly relate not to the ending of the business but to its continuance, we find the power too narrow to authorize the transaction of sale entered into and concluded under its supposed authority."

It is contended for appellant that in the instance before us the specific powers do not control because after the initial broad power, is the phrase " * * * and not intending by anything hereinafter contained to limit or cut down such full power * * *." Williams v. Dugan, 217 Mass. 526, 105 N.E. 615, L.R.A. 1916C, 110, presented a quite similar situation. Concerning the power of attorney in that suit, the Court said, 217 Mass. at page 529, 105 N.E. at page 616, "The general power of attorney is couched in comprehensive terms." After the general power came a statement of specific powers and then the language, "It is understood that the foregoing enumeration of specific powers does not in any way control, limit, or cut down the general powers herein granted, or which should have been granted in order to carry out the purposes hereinbefore expressed." The Court said, regarding this language: "But these words are used with reference to the powers expressly granted and do not enlarge those powers beyond their fair scope. They fall short of conferring the right to borrow money on the principal's account. These are the general words in substance commonly found in printed blank powers of attorney. See Crocker's Notes on Common Forms, 416, where are shorter but equally comprehensive forms. They relate to matters incidental to the main subject, for which the agency is created, and do not confer new or alien powers."

Kaname Fujino v. Clark, Attorney General, D.C.Haw., 71 F.Supp. 1, 2, affirmed 9 Cir., 172 F.2d 384, certiorari denied 337 U.S. 937, 69 S.Ct. 1512, was an Alien Property Custodian matter. A Japanese national had admittedly intended to make a gift of

proper; hereby giving to my said attorney power and authority to do, execute and perform for me and in my name all and singular those things which he shall judge expedient or necessary in and about the premises, as fully as I, the

said Carl J. R. H. von Wedel, could do if personally present, hereby ratifying and confirming whatever my said attorney shall do or cause to be done in, about or concerning the premises, or any part thereof."

certain real property to his son. He executed a general power of attorney which authorized his attorneys in fact among other things " 'to buy, take on lease and otherwise acquire, and to hold, sell, mortgage, hypothecate, pledge, lease and otherwise dispose of, and in any way and every way and manner deal with real property, leaseholds, and other interests in real property' * * *." Under the laws of Hawaii, Revised Laws 1945, Section 12757, powers of attorney for the transfer of real property must be recorded. The power in the Kaname case was so recorded. The attorneys in fact, allegedly acting for their principal, executed a deed for the real property by which they purported to convey it to the son as a gift. The District Court held that the power of attorney did not authorize the attorneys in fact to give away any of their principal's assets. The Court said, 71 F.Supp. at page 4, that "To authorize a gift of an asset by an agent, the agent must have such a power expressly and clearly conferred." The power of attorney was construed, from its language, as a grant to carry on the principal's business. And, said the Court, 71 F.Supp. at page 4: "A gift is not a business transaction." In another Alien Property Custodian suit in the same District Court, also involving a general power of attorney and an attempted gift of real estate by the attorney in fact, the Court held that " * * * despite the grantor's intent to make a gift, he did not give his attorney in fact the power to make a gift." Miyuki Okihara v. Clark, D.C., 71 F.Supp. 319, 322.[2] It is unnecessary to decide whether the law of New York, where the power was executed and apparently used, controls the construction of the document as New York law is to the same effect. Craighead v. Peterson, 72 N.Y. 279, 284, 28 Am.Rep. 150; Rossiter v. Rossiter, 8 Wend., N.Y., 494, 24 Am.Dec. 62;

Porges v. United States Mortgage Co., 203 N.Y. 181, 96 N.E. 424. Appellant cites no decisions contrary to the above. Two English charter-party cases are referred to. These are not in point on the particular problem before us.

In the absence of ambiguity[3] or incompleteness,[4] we must deal with the intent as actually expressed in the document itself. The power of attorney before us is neither ambiguous or incomplete. Under the settled law, the specific language governs. That language refers solely to von Wedel's ordinary business affairs. It contains nothing that can be reasonably construed as authority for the attorney in fact to make gifts of von Wedel's property. The principle of ejusdem generis squarely applies and the command of the specific language must be pursued with legal strictness.

The judgment of the District Court will be affirmed.

GOODRICH, Circuit Judge (concurring).

I go along with the result because I think it is supported by authority and the subject is not one on which to try to start a revolution. But it seems to me that the whole thing is incongruous. A man has said, in effect, that he gives another the power to do everything for him. Then he enumerates certain specific things which the other may do, carefully saying, however, that he does not mean to alter the general power by stating specific powers. Then he ends up by saying that he means his language to be as broad as he stated it. Yet the rule seems to be that he is held to mean something much less than indicated by the language he used. Perhaps the law cannot quite say that white is black. But in this instance it certainly can make white look a pretty dark grey.

2. See also Bertelsen v. Bertelson, 49 Cal. App.2d 479, 484, 122 P.2d 130, 133; Brown v. Laird, 134 Or. 150, 291 P. 352, 73 A.L.R. 877; Smith v. Powell, 5 Tex.Civ.App. 373, 23 S.W. 1109; Mott v. Smith, 16 Cal. 534, 557.

3. See Williston on Contracts. Rev.Ed. 1936. Sections 610, 629; Eustis Mining

Co. v. Beer, Sondheimer Co., D.C.S.D. N.Y., 239 F. 976, 985.

4. See Jones on Evidence, 4th Ed. Section 440; Mechem on Agency (2nd Ed.) Section 775; Wigmore on Evidence (3rd Ed.) Sections 2425 ff.; Williston on Contracts, Rev.Ed., 1936, Sections 631–633.