**Clara ZAWADSKI DE BUENO**

v.

**Alejandro BUENO CASTRO and A.B.P. Corporation, Appellants.**

**No. 86–3555.**

United States Court of Appeals,
Third Circuit.

Argued May 1, 1987.

Decided July 2, 1987.

Joel H. Holt (Argued), Christiansted, St. Croix U.S. Virgin Islands, for appellants.

Judith A. Turner (Argued), Richard H. Hunter, Isherwood, Hunter and Colianni, Christiansted, St. Croix U.S. Virgin Islands, for appellee.

Before SEITZ, HIGGINBOTHAM, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises a number of intricate questions concerning a 1975 "Separation of Properties Agreement" (agreement) executed in Columbia, South America, between the plaintiff and her deceased husband, a 1979 power of attorney from the husband to his son, and the effect of both documents upon the son's transfer of his father's Virgin Islands real property to a corporation apparently owned by the son and his siblings. The plaintiff, Clara Zawadski de Bueno (Zawadski), originally filed suit in the District Court for the District of the Virgin Islands seeking an order declaring the transfer invalid, quieting title to the property in the name of the decedent's estate, and declaring her entitlement to a one-third intestate share in that estate. The defendants failed to answer Zawadski's complaint, however, and the district court ultimately granted a default judgment both declaring the transfer invalid and quieting title to the property as requested. The district court deferred the question of Zawadski's right to an intestate share in the estate for a later determination by the probate division of the Virgin Islands territorial court.

The defendants appeal from the district court's denial of their motion to set aside the default judgment, and urge as grounds

therefor excusable neglect under Fed.R. Civ.P. 60(b),[1] a meritorious defense by virtue of both the 1975 agreement and the 1979 power of attorney, and a lack of prejudice to the plaintiff. We agree with the defendants that the facts in this case establish excusable neglect. We conclude that the district court erred both in holding to the contrary and in failing to address the defendants' contentions with respect to the 1975 agreement and the absence of prejudice to the plaintiffs. Accordingly, we vacate the order refusing to set aside the default judgment and remand.

## I.

Zawadski, a citizen of Colombia, South America, married Adolfo Bueno Plaza (Bueno Plaza), a citizen of Venezuela, in the Catholic Church in Colombia in 1958. The two informally separated in or about 1967, however, and were formally separated through legal proceedings in Colombia in 1975. Apparently as a part of the separation process, the parties entered into a lengthy "Separation of Properties Agreement," which was approved by the Colombian court. This agreement refers in several places to a "liquidation of the conjugal society," and pursuant to the agreement the Colombian court ordered the parties "to proceed towards the liquidation, inventory, valuation, and partition of all the properties that are under usufruct of the dissolved society."

Several years after executing the "Separation of Properties Agreement," on March 26, 1979, Bueno Plaza purchased real property on the island of St. Croix with a stated value for stamp tax purposes of $265,000.

Shortly thereafter, on May 29, 1979, Bueno Plaza gave a general power of attorney to one of his sons, defendant Alejandro Bueno Castro (Bueno Castro). This document, which was executed in Venezuela, provided in part:

> Therefore my above-named attorney is hereby authorized to buy, sell, interchange, or rent all kinds of properties and rights and to stipulate and receive costs or other products or equivalents in that kind of business; ... and, in general, power of attorney to do, in respect and concerning my properties and rights, all and everything that I could do in my own benefit and without limitations and in accordance with the law.

On July 12, 1984, Bueno Castro transferred his father's above-mentioned St. Croix property by warranty deed to the A.B.P. Corporation.[2] A.B.P. is a Panamanian corporation not registered to do business in the Virgin Islands, and is apparently owned jointly and in equal shares by Bueno Castro and his siblings.[3] The deed stated that the transfer was for ten dollars and other good consideration; however, the actual payment of consideration is in dispute. In a related Florida lawsuit dealing with a similar transfer of Florida real property, Bueno Castro admitted that no money was actually paid for the Florida property, and that the only consideration paid to Bueno Plaza was "what his children have always given him; a lot of affection and a lot of love."

Bueno Plaza died intestate on November 8, 1984, approximately four months after his son had transferred the St. Croix property to A.B.P.[4] Shortly thereafter, Zawad-

---

**1.** Fed.R.Civ.P. 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;
> ....

**2.** Although referred to before this court as A.B.P. Corporation, Bueno Castro testified in a related Florida litigation that the corporation is alternatively known as A.B.P., Inc., and A.B.E. P.E., Inc. We will refer to the company as A.B.P. Corporation or simply A.B.P.

**3.** Zawadski alleged in her complaint that A.B.P. was solely owned by Bueno Castro; however, Bueno Castro testified in the Florida litigation that the corporation was jointly owned by Bueno Castro and his siblings. Although we do not intend to foreclose further argument on the question, we note that Bueno Castro's Florida testimony was supported by A.B.P.'s application to transact business in Florida.

**4.** Although Zawadski's complaint alleged that "Adolfo Bueno was a citizen of Venezuela, South America at the time of his death," the record does not disclose Bueno Plaza's actual whereabouts when he died.

ski instituted suit in St. Croix as well as in Florida, asserting in each jurisdiction that the relevant transfer of property was a gift, and that therefore each transfer should be set aside as improper under the terms of the 1979 power of attorney. In each case she sought her intestate share of the property as a surviving spouse, and in the instant action this claim is predicated upon 15 V.I.C. § 84(1). Section 84(1) provides that one-third of an intestate decedent's real property be distributed to his or her surviving spouse. Both the Florida complaint and the Virgin Islands complaint named Bueno Castro and A.B.P. as defendants, and both defendants were properly served in both actions.

The defendants assert that both complaints were promptly forwarded to the law firm of Castro & Castro in Miami, Florida. That firm entered an appearance in Florida and assertedly retained John F. James, a St. Croix attorney, for the St. Croix case. Attorney James did not file an answer, however, and a variety of excuses have been offered for this failure. According to the defendants, James believed that he was not to do anything until he received further instructions and, although "technically plaintiff's counsel did not have to advise him of its default motions," he had previously informed plaintiff's counsel of "his interest in the case." Further, the defendants assert that when James subsequently contacted Florida counsel regarding instructions, he received a notice of dismissal of the Florida suit and concluded that the St. Croix case would likewise be dismissed. Accordingly, he did nothing further. Apparently unknown to James, however, the Florida suit had been dismissed without prejudice, and the plaintiff quickly reinstated it by filing an amended complaint. James' error in this respect is blamed on Florida attorney Castro's alleged preoccu-

pation with the arrest and subsequent conviction of his law partner/brother.

On November 21, 1985, Zawadski filed a motion for a default in the instant action. The court granted this motion, and on June 6, 1986, Zawadski filed a motion for a default judgment. Her default judgment motion sought an order declaring the St. Croix property transfer invalid, quieting title to the property in the name of Bueno Plaza's estate, and declaring Zawadski's entitlement to a one-third interest in that estate. On June 12, 1986, the district court issued an order granting Zawadski's first two requests, but not her third, deferring the question of her statutory interest in the estate to the probate division of the territorial court.

On July 11, 1986, the defendants moved to set aside the default judgment. The defendants argued excusable neglect, and urged a meritorious defense by virtue of both the 1975 agreement and the 1979 power of attorney.[5] The district court rejected these arguments without a hearing, concluding that the failure to file an answer was a deliberate "trial strategy," and that the transfer was a gift impermissible under the wording of the power of attorney. The district court did not address the effect, if any, of the 1975 "Separation of Properties Agreement" or whether the plaintiff would be prejudiced if the default judgment were vacated.

## II.

Weighing the equities on a motion to vacate a default judgment and the need to finally resolve controversies "does not lend itself to a rigid formula or per se rule." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984). Rather, in exercising its discretion, the trial court must consider three factors: (1) whether the

---

**5.** Although Zawadski asserts that the Colombian Separation of Properties Agreement is being asserted as a meritorious defense for the first time on appeal, page four of the defendants' memorandum in support of their motion to set aside the default judgment makes clear reference to the court-approved Separation of Properties Agreement under the heading of meritorious defense. Accordingly, we consider the issue to

be sufficiently preserved for appeal. Further, to the extent Zawadski's lack of any interest in Bueno Plaza's estate by virtue of that agreement bears on standing, it is arguable that we may reach the issue *sua sponte. See Page v. Schweiker*, 786 F.2d 150, 158–59, 162 (3d Cir.1986) (judgment of the court in which Garth, J., concurred and Hunter, J., dissented).

plaintiff will be prejudiced if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *Id.; Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656 (3d Cir.1982). "These factors inform both the district court's initial determination regarding a default judgment as well as appellate review of that decision." *Hritz,* 732 F.2d at 1181. As a general matter, this court does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits. *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d Cir.1983); *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982).

### A.

■ In holding the defendants' conduct to be culpable, the district court concluded that "[t]he decision not to appear, and thus permit a default judgment to be entered, was strictly a matter of defense strategy, and thus it was culpable conduct on the part of the defendants which led to the default." In support of this holding Zawadski points to an affidavit by John James, the Virgin Islands counsel originally contacted by Castro & Castro, in which James asserted that Florida counsel led him to believe that the Florida case had been dismissed, and told him that "the similarity of the Florida and Virgin Islands cases was such that the Florida case might be d[is]positive of all matters between Mr[s]. Zawadski [de] Bueno and the children of Adolfo Bueno Pla[z]a." According to Zawadski, the inference to be drawn from this statement is that Florida counsel decided to save expense and time by not litigating the Virgin Islands action, and instead concentrated on the Florida action in the hope that a successful result would dispose of the Florida action under the principles of collateral estoppel.

Moreover, asserts Zawadski, the defendants' assertions of neglect are belied by the lack of any affidavit from Florida counsel "as to preoccupation with other cases, or instructions given to Virgin Islands' counsel that went astray in the mail, or personal problems of his brother which caused him to completely overlook the Virgin Islands case." The only relevant affidavit was that of Virgin Islands attorney John James. Indeed, notes Zawadski, the Florida law firm in question was comprised of five attorneys, at least three of whom have been referred to in defendants' memoranda as "handling ... Castro's matters."

In *Wells v. Rockefeller,* 728 F.2d 209, 214 (3d Cir.1984), upon which both the district court and Zawadski heavily rely, we held that because the plaintiff and his counsel's "tactic" was to allow the entry of a default judgment "as a matter of strategy," the plaintiff had to "live with [the] consequences." In the next sentence of that opinion, however, we went on to distinguish the *Wells* case as "quite unlike those in which we have stated that default judgments should be set aside in doubtful situations," and cited to a variety of cases in which we had done just that. One of those cases, *Gross v. Stereo Component Systems, Inc., supra,* is particularly instructive here.

In *Gross,* the defendant's "local counsel" informed the plaintiff that she was not authorized to accept service of plaintiff's complaint, and accordingly the plaintiff served the complaint directly upon the defendant. The defendant then mailed the complaint to counsel in Boston, who in turn mailed it to local counsel without a cover letter. Local counsel was thereafter unable to contact Boston counsel, who was on vacation, and informed the plaintiff of her difficulties. Plaintiff's attorney asserted that he told local counsel that no further delay would be tolerated, and eventually a default judgment was entered.

After considering these facts, the district court in *Gross* refused to set aside the default judgment, concluding that the defendant's failure to answer was not due to excusable neglect because local counsel had failed to either check the public record or contact her client as to the date of service of the complaint. We reversed, holding that the record did *not* support "an inference of willfulness or bad faith;" but

rather, "a serious breakdown in communication between [counsel] in Boston and [local counsel] in Philadelphia." *Id.* at 124. We now conclude that the instant action presents a similar breakdown in communication, and that therefore this case presents a "doubtful situation" of the type from which *Wells* distinguished itself.

As in *Gross,* the complaint in the instant action was mailed directly to foreign counsel, who forwarded it to local counsel with vague and limited instructions, leaving local counsel unsure of what, if any, responsibility he had for the case. When local counsel attempted to clarify his role by seeking instructions, he received no reply other than a copy of an order signed by a Florida court dismissing the Florida case, and accordingly assumed that he was to do nothing further. Attorney James did not become aware of the reinstitution of the Florida proceeding until well after the Virgin Islands default judgment had been entered and Florida counsel replaced. Indeed, we fail to see how submission by the defendants to a default judgment could possibly constitute a "deliberate trial strategy." The dismissal of the Florida action involving Florida property clearly could have no collateral effect upon the St. Croix litigation. Accordingly, we conclude that no deliberate or willful trial strategy was involved; rather, as in *Gross,* there was a "serious breakdown in communication" between St. Croix and Florida counsel, which may or may not have been caused by personal legal problems at Castro & Castro. Thus, the facts of this case support a conclusion of excusable neglect as a matter of law, and therefore the district court abused its discretion in accepting Zawadski's assertion of a deliberate trial strategy.

### B.

The defendants suggest a meritorious defense by virtue of both the 1979 power of attorney and the 1975 agreement. We discuss each seriatim.

### 1.

■ The defendants' first alleged source for a meritorious defense, the 1979 power of attorney, has been rejected by the district court. The court rejected this defense on the theory that the transfer was a gift, and the 1979 power of attorney did not confer upon Bueno Castro the power to make gifts. Assuming *arguendo* that Virgin Islands law controls,[6] we agree.[7]

In *Von Wedel v. McGrath,* 180 F.2d 716 (3d Cir.1950), we analyzed a power of attorney similar to the one in this case to determine whether it authorized a gift of the principal's property, and held that it did not. The initial general language of the instrument in that case granted the power "to do any and all acts which I could do if personally present, hereby intending to give the fullest power and not intending by anything hereinafter contained to limit or cut down such full power." Specific powers were then stated, including "giving and granting unto him full power to demand, sue for, recover and receive all manner of goods, chattels," and various other enumerated business powers. The instrument then concluded by granting the "power and authority to do, execute and perform for me and in my name all and singular those things which he shall judge expedient or necessary in and about the premises, as fully as I, ... could do if personally present...." *Id.* at 717.

Similarly in this case, the initial general language of the power of attorney grants the power "to represent me, claim for me and protect all my rights, interests and actions in everything concerning the business and interests that I have at present and that I might have in the future." Specific powers are then stated, including the power "to buy, sell, interchange or rent all kind of properties and rights," and to

---

**6.** There may be some question as to whether or not Virgin Islands law should indeed control the interpretation of the power of attorney. Therefore, on remand we direct the district court to determine the appropriate choice of law.

**7.** We therefore reject the defendants' various suggestions that the transfer was not a gift, that if it was a gift the gift was ratified by Bueno Castro, and/or that the invalid transfer could be validly made if done to avoid probate.

transact other forms of business. Finally, the instrument concludes with a general grant of power "to do ... all and everything that I could do in my own benefit and without limitations and in accordance with the laws." Thus, as in *Von Wedel*, we conclude that the general language of the power of attorney is limited by its specific language, which does not confer the power to make a gift. *See id.* at 718–19. *See also* Restatement (Second) Agency § 37 (1958) (general expressions limited in application; specific authorization tends to show that a more general authority not intended); Restatement (Second) Agency § 65(1) comment a (1958) ("[u]nless otherwise agreed, authority to sell does not include authority ... to make a gift...."). Accordingly, we conclude that the district court did not err in concluding that the transfer was an improper gift under the terms of the 1979 power of attorney.

### 2.

We turn now to the defendants' second alleged source for a meritorious defense: the 1975 agreement. As previously discussed, Bueno Plaza and Zawadski informally separated in or about 1967, and were formally separated through legal proceedings conducted in Columbia, South America, in 1975. Apparently as a part of the separation process, the parties entered into a lengthy "Separation of Properties Agreement," which was approved by the Colombian court, and which referred in several places to a "liquidation of the conjugal society." Based on that agreement the Colombian court ordered the parties to "proceed towards the liquidation, inventory, valuation and partition of all the properties that are usufruct of the dissolved society." Thus, it is argued, Zawadski no long-

er had any right to an intestate share in Bueno Plaza's estate, and therefore could not challenge the transfer of his property. The district court did not specifically discuss the effect of the 1975 agreement, however, concluding instead that the transfer was a gift and therefore unauthorized under the power of attorney, and that this made all other averments as to a meritorious defense inconsequential. We disagree.

■ Again assuming *arguendo* that Virgin Islands law governs, here with respect to Zawadski's alleged right to an intestate share in Bueno Plaza's estate,[8] then under 15 V.I.C. § 84(1) Zawadski would be entitled, if she were a surviving spouse, to one-third of her deceased husband's estate, unless she procured a final decree or judgment dissolving the marriage.[9] 15 V.I.C. § 87(2). Arguably, however, the court-approved 1975 agreement *is* a final decree or judgment dissolving the marriage. Alternatively, the document may, in sufficiently clear language, release each party's interest in the estate of the other. In either case, the validity or invalidity of the transfer of the St. Croix property under the power of attorney would be irrelevant, as Zawadski could have no legal interest in setting it aside. Accordingly, on remand we direct the district court to determine, under the appropriate law, whether Zawadski is entitled to an intestate share in her husband's estate, and if so, whether under the 1975 Separation of Properties Agreement she divested herself of all interest in real property he thereafter acquired.

### C.

The district court also did not address whether Zawadski would be prejudiced if the default judgment were vacated. On appeal, Zawadski asserts that she would be

---

8. Although the parties again make their arguments based upon Virgin Islands law, it is not necessarily clear that this should be so. Indeed, it appears to us that the 1975 agreement presents two distinct choice of law problems: (1) what law is to govern Zawadski's right to an intestate share in Bueno Plaza's estate, and (2) if the 1975 agreement is relevant in determining Zawadski's rights—as it is under Virgin Islands law—then what law is to govern the interpretation of that agreement? Shall it be Columbian law, the agreement having been entered into in that country and the Columbian court having

jurisdiction over the parties, shall it be the country of Bueno Plaza's domicile at the time of his death, or shall it be Virgin Islands law? Accordingly, we direct the district court to address these questions on remand.

9. Under 15 V.I.C. § 87(4) a surviving wife's right to an intestate share is also terminated if she abandons her husband. Although this possibility has been raised on appeal, it was never argued in the district court and we therefore do not discuss it.

prejudiced, because vacating the judgment would prevent her from initiating a probate proceeding, and thereby prevent her from maintaining the property. On remand, the district court should determine for itself whether vacating the judgment would prejudice Zawadski.

### III.

We conclude that the record in this case does not support any inference of willfulness or bad faith, but that the facts support a conclusion of excusable neglect as a matter of law. Therefore, the district court abused its discretion in finding the defendants' failure to answer the plaintiff's complaint to be the result of a deliberate trial strategy. Further, we hold that the district court erred in not addressing whether the 1975 agreement provided the defendants with a meritorious defense, and in not addressing whether Zawadski would be prejudiced if the default judgment were vacated. Accordingly, the order of the district court refusing to set aside the default judgment will be vacated, and the case remanded for further proceedings consistent with this opinion.

Each side to bear its own costs.