ESTATE OF YETTA BRONSTON, DECEASED, JACK E. BRONSTON, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bronston v. Commissioner
Docket No. 7327-87.
United States Tax Court
T.C. Memo 1988-510; 1988 Tax Ct. Memo LEXIS 540; 56 T.C.M. (CCH) 550; T.C.M. (RIA) 88510; October 31, 1988; As amended November 3, 1988 Jack E. Bronston, for the petitioner. Mildred Moon, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency of $ 25,614.06 in Federal estate tax due from the estate of Yetta Bronston. After concessions by the parties, the sole issue remaining is whether decedent's son, acting pursuant to a power of attorney, was authorized to *541 make $ 10,000 gifts to each of six members of decedent's family. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Yetta Bronston ("decedent") died testate on August 22, 1983. Decedent was a resident of the state of New Jersey at the time of her death. Carol Schoen, decedent's daughter, Jack E. Bronston and Charles B. Bronston, decedent's sons, originally were co-executors of decedent's estate. The co-executors timely filed a Federal estate tax return on behalf of decedent's estate. Charles B. Bronston was deceased at the time of trial. Decedent executed a power of attorney on June 9, 1983, which appointed her son Charles B. Bronston (Bronston) as attorney-in-fact. The power of attorney allowed Bronston, "To ask, demand, sue for, recover * * * money, debts * * * due, owing, payable, or belong to me * * *; to lease, purchase, exchange * * * any real or personal property * * * as said attorney in fact shall deem proper, * * *." In addition, the power of attorney authorized Bronston: To grant, bargain, sell, convey, or lease, or contract for the sale, conveyance, or lease of any property now or in the future owned by me, whether real, personal *542 or mixed and wheresoever situate, and in my name to execute whatever documents are necessary to effect such transactions, giving and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof. [Emphasis added.] Decedent, with a minor exception, was not involved in any business activities at the time she executed the power of attorney on June 9, 1983. The exception was her position as secretary of one of the family's closely held corporations. Her interest in the corporation was a life beneficiary of three trusts created by her children who transferred the stock of the trusts. Decedent did not own any business assets when she executed the power of attorney. All of her assets were passive investments at that time. When she executed the power of attorney, decedent had a history of giving gifts qualifying for exclusion from gift tax to her children. *543 In 1980 and 1981 decedent gave $ 3,000 each to Jack E. Bronston and his wife Sandra. Also, in 1982 decedent gave $ 10,000 each to Jack E. Bronston and his wife. In addition, prior to the time she executed the power of attorney, decedent intended to give real property worth $ 60,000 to her children in 1983. This real property was not given but was bequeathed in decedent's will to Charles Bronston. As of June 30, 1983, an investment company managed $ 310,000.79 of decedent's stocks and bonds in a discretionary account. The investment firm had full discretion over how to invest the funds in the account. Funds not currently invested were placed in a cash fund account. The company retained control over the cash fund account for purposes of further investment but did not have the power to distribute funds from the account. Pursuant to the power of attorney and acting on his belief of what decedent had desired, Bronston transferred $ 60,000 from decedent's cash fund account for no consideration to the following individuals: Charles B. Bronston
$ 10,000
Carol Schoen
10,000
Jack E. Bronston
10,000
Sandra Bronston
10,000
Judith Bronston
10,000
Sarah Schoen
10,000
*544 Charles B. Bronston, Carol Schoen and Jack E. Bronston are decedent's children; Sandra Bronston and Judith Bronston are spouses of decedent's two sons; Sarah Schoen appears to be related to decedent through decedent's daughter Carol Schoen although it is not clear from the record. The record does not indicate when Bronston exercised the power of attorney. Based on the positions of the parties in this case, he must have exercised it sometime between June 9, 1983 when decedent granted him the power of attorney and August 22, 1983 when decedent died. Decedent entered New York University Medical Center on July 28, 1983, and remained there until her death on August 22, 1983. On August 2, 1983, the decedent underwent surgery while at New York University Medical Center. OPINION At issue is whether decedent's power of attorney authorized her attorney-in-fact to give $ 10,000 to each of six of decedent's family members. Petitioner contends both that the power of attorney authorized the gifts and that decedent intended for her son to make gifts. Respondent argues decedent did not authorize or intend her son to give any of her property away. Respondent contends that the language *545 in the power of attorney allowed the attorney-in-fact to engage only in business transactions on the decedent's behalf. If Bronston had the authority to make gifts under the power of attorney, then then $ 60,000 is not includable in decedent's estate. If Bronston acted without authority, the parties agree that the $ 60,000 is includable in decedent's estate. Section 2001[1] imposes a tax on the taxable estates of decedents. The taxable estate is the gross estate less deductions. Sec. 2051. The gross estate includes the value of all property decedent had an interest in at death. Sec. 2033. State law determines whether decedent had an interest in property at the time of death. Estate of Gamble v. Commissioner,69 T.C. 942, 948, (1978).[1]
We apply New Jersey law in the present case to determine whether the power of attorney authorized gifts. Commissioner v. Estate of Bosch,387 U.S. 456 (1967). *546 Our determination is based on New Jersey law because decedent executed the power of attorney in New Jersey, and the state law where the power of attorney is executed controls. Bank of America v. Horowytz,104 N.J. Super. 35, 248 A.2d 446 (Bergen County Ct. 1968). A power of attorney authorizes the attorney-in-fact to act for the principal. State v. Kennedy,61 N.J. 509, 296 A.2d 65 (1972). The power is not, however, a gift of the principal's property to the agent. State v. Kennedy, supra.
Respondent argues that the power of attorney authorized Bronston to manage only the business affairs of the decedent. Respondent cites two cases decided under New Jersey law in support of his position. See Von Wedel v. McGrath,180 F.2d 716 (3d Cir. 1950), cert. denied 340 U.S. 816 (1950); Manna v. Pirozzi,44 N.J. Super. 227, 130 A.2d 55 (App. Div. 1957). Both cases are distinguishable. In Von Wedel v. McGrath,180 F.2d 716 (3d Cir. 1950), cert. denied 340 U.S. 816 (1950), taxpayer's husband executed a general power of attorney in favor of his friend and *547 lawyer before taking a trip to Europe. World War II started while taxpayer and her husband were in Europe and prevented taxpayer's husband from returning to the United States. Subsequently, the attorney-in-fact transferred property gratuitously to the taxpayer pursuant to the power of attorney. In Von Wedel the instrument's initial language granted broad power to the attorney-in-fact: "to do any and all acts which I could do if personally present, hereby intending to give him the fullest power and not intending by anything hereinafter contained to limit and cut down such full power." Following this general introductory language, the remaining grant was of specific routine business powers, for example: "'giving and granting unto his full power to demand, sue for, recover and receive all manner of goods, chattels.'" 180 F.2d 717 n.1. The court found that notwithstanding the broad, general grant of power, the specific power to handle business matters governed. The power of attorney did not authorize the attorney-in-fact to give his principal's property away but authorized the attorney to oversee and manage the principal's "ordinary business affairs." Von Wedel v. McGrath,180 F.2d at 719. *548 In Manna v. Pirozzi, 44 N.J. Super, 227, 130 A.2d 55 (App. Div. 1957), the decedent had given his brother a power of attorney. The administrators of decedent's will challenged the attorney's attempted exercise of the power during decedent's lifetime to transfer stock from decedent to the attorney's sons for no consideration. The power of attorney gave the attorney authority, (1) To demand, sue for * * * moneys * * * and chattels * * * due * * * me * * *; (2) To sell and dispose of any shares of stock, bonds or securities that I now hold or may hereafter hold in any business corporation in the United States and to execute such transfers or assignments that may be necessary to assign my said shares of stock of bonds [sic], stocks or securities to the purchaser thereof; (3) To * * * endorse any promissory note or other negotiable instrument payable to me * * *. [Emphasis in original.] The Manna court held that the power of attorney did not authorize gifts. Taken as a whole, the document was designed for a business purpose. Specifically with respect to stock, the instrument bestowed powers that were strictly business or commercial in nature. The *549 attorney-in-fact relied for his authority on the provisions which the court found specifically contemplated a sale of the stock and not a gratuitous transfer. The court's opinion is also quite direct in impugning the integrity and credibility of the attorney-in-fact: Without repeating Judge Schettino's censurious comments upon him (as to which we see no reason to differ), we may simply say that there is no sufficient basis for interfering with the finding that [the principal] did not intend by the 1939 (or the 1949) power to authorize the transfer of the stock to [attorney-in-fact] as trustee. [130 A.2d 159.]
The court also found troubling the lack of proof of questions surrounding the need and purpose of the power of attorney. Manna v. Pirozzi, 130 F.2d at 57. In these circumstances, the court would not permit the attorney-in-fact to give away his principal's property. The power of attorney in the present case differs materially from that in Von Wedel and Manna. The decedent's power of attorney in standard fashion contains a general provision granting broad power 'to do and perform all and every act and thing whatsoever requisite *550 and necessary." The document also, however, specifically authorizes Bronston, "to grant [and] * * * convey * * * any property now or in the future owned by." The power of attorney in Von Wedel and Manna did not include such language. The specific language in decedent's power of attorney could authorize gifts in appropriate circumstances. While this language also appears with language granting powers to sell, bargain, lease and contract, in Von Wedel and Manna the language clearly limited the exercise of powers to business transactions. In this case there is not such a specific limitation and the circumstances surrounding the decedent's giving the power are quite unlike those present in either Von Wedel and Manna. The circumstances are much more closely aligned with Estate of Gagliardi v. Commissioner,89 T.C. 1207 (1987). Decedent's usual affairs were different than that principals's affairs in Von Wedel and Manna. The Von Wedel and Manna courts found the principals had given the powers of attorney out of their need for someone to handle their business affairs. The decedent in the present case did not execute the power *551 of attorney in a similar context. Decedent's business involvement was minimal, and she had no partnership or sole proprietorship interests. The bulk of her assets, which were all passive investments, was managed by an investment company. Decedent looked to her son as an attorney-in-fact to provide for her support and medical care as well as to continue her usual practice of giving gifts qualifying for the gift tax exclusion to her family. Respondent has not produced any authority that would suggest "grant [and] convey" is inappropriate gift language in New Jersey. The powers of attorney at issue in Von Wedel and Manna did not contain the language at issue in this case. Absent a New Jersey case that would interpret this language narrowly, cf. Commissioner v. Estate of Bosch,387 U.S. 456 (1967), we believe a common sense interpretation of "grant [and] convey" should prevail. While we believe the New Jersey courts would closely scrutinize the ambiguity of this power, in the personal circumstances of its creation and the personal concerns of decedent for her family members, we believe the New Jersey courts would sustain Bronston's authority to make *552 the gifts that are at issue. The decedent historically gave gifts to her children and had expressed her intention to give gifts to them in 1983. At the time she executed the power of attorney, she had no business assets to manage. She had not yet made the gift she intended for 1983. Her usual affairs at the time she executed the power of attorney included giving gifts to her children and their spouses. She gave a power of attorney to her son who then exercised the power to give money to the natural objects of decedent's bounty, her children and their spouses. Bronston, the attorney-in-fact, acted on behalf of decedent, continuing her usual affairs. We rely on these surrounding circumstances in finding that the power of attorney authorized gifts. See Estate of Gagliardi v. Commissioner,89 T.C. 1207 (1987). We hold, therefore, that the language in the power of attorney permitting him to "grant [and] convey" decedent's property, authorized Bronston to give $ 60,000 to decedent's family members in the same manner that decedent had made such gifts in prior years, i.e., gifts to each child and spouse in an amount that did not require the filing of a gift tax return. *553 To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect as the of the date of the decedent's death in 1983, unless otherwise indicated.↩